Lubin & Meyer, P.C. *vs.* Nancy M. Lubin, administratrix[1];
Andrew C. Meyer, Jr., & another,[2] third-party defendants.

Suffolk. March 5, 1998. - April 16, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Corporation,* Professional corporation, Stockholder, Stock. *Insurance,* Life insurance. *Contract,* Performance and breach. *Attorney at Law,* Canons of ethics. *Interest.*

A stock redemption agreement of a professional corporation operated, in the circumstances, to extinguish all claims of a deceased stockholder's estate against the corporation [308-309], and the corporation breached the agreement by failing to pay over the agreed redemption price within a reasonable time [309-310]: the estate was entitled to interest on the amount due, calculated from the date on which the corporation was reasonably able to make payment [310-311].

In an action seeking a declaratory judgment to settle claims among a professional corporation of attorneys, the estate of a deceased shareholder, and the remaining shareholders, the judge erred in ruling that the estate was entitled to receive dividends during the period of the litigation, where G. L. c. 156A, § 12 (*e*), does not confer such a status on an estate, and where such a status would be contrary to S.J.C. Rule 3:06 (2) (a). [311]


Civil action commenced in the Superior Court Department on December 14, 1990.

The case was heard by *Charles F. Barrett,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*William I. Cowin* (*David A. Rich* with him) for the plaintiff & others.

*John Kenneth Felter* (*Steven E. Skwara* with him) for Nancy M. Lubin.

Lynch, J. This appeal involves a stock redemption agreement between the plaintiff professional corporation, Lubin & Meyer, P.C. (corporation), and its three principal stockholders, Donald

---

[1]Of the estate of Donald M. Lubin.

[2]Philip J. Crowe, Jr.

M. Lubin, Philip J. Crowe, Jr., and Andrew C. Meyer. When Donald M. Lubin (Lubin) died, a dispute concerning the rights under the agreement arose among the corporation, its two remaining stockholders, and the defendant, Nancy M. Lubin, administratrix of the estate of Donald M. Lubin (estate).[3] The

[3]The "Stock Purchase Agreement," dated August 26, 1988, provided the following:

"AGREEMENT . . . by and between Lubin & Meyer, P.C., a professional corporation organized under the laws of the Commonwealth of Massachusetts (hereinafter called the "Corporation") and Donald M. Lubin, Philip J. Crowe, Jr. and Andrew C. Meyer, Jr. (hereinafter each called the "Stockholder" or "Stockholders" collectively).

"WHEREAS, the Corporation has issued outstanding shares of its common capital stock standing in the names of the Stockholders; and

"WHEREAS, the parties believe that it is in the best interests of the Corporation and the Stockholders to make provision for the future disposition of the shares of common capital stock of the Corporation owned by each Stockholder upon the death of a Stockholder (such shares being hereinafter called "Stock").

"NOW, THEREFORE, in consideration of the mutual [covenants] and agreements herein contained and for other good and valuable consideration, the parties hereto hereby covenant and agree as follows:

"1. *Purchase Price*

"The corporation presently owns and will continue to own life insurance insuring the lives of each of the three Stockholders. It is agreed between and among the three Stockholders that if one of the Stockholders is to die, that the purchase price for any and all interest that Stockholder has in the corporation by way of shares and any and other interest including that of decedents, heirs and assigns, shall be satisfied by the payment of the death benefit paid pursuant to said life insurance, which death benefit shall be maintained as a minimum of Two Million Dollars for each Stockholder unless otherwise agreed by Stockholders.

"2. *Modification*

"No change or modification of this Agreement shall be valid unless made in writing and signed by each of the parties hereto.

"3. *Binding Effect*

"This Agreement shall be binding upon and shall inure to the benefit of the successors, assigns, personal representatives, heirs and legatees of the respective parties hereto.

"4. *Integration*

"This agreement constitutes the entire agreement of the parties in relation to the subject matter hereof and there are no promises, representations, conditions, provisions or terms related to the subject hereof other than those set

corporation sought a declaratory judgment in the Superior Court and the estate, in turn, counterclaimed against the corporation and added the remaining stockholders as third-party defendants. A trial was held before a Superior Court judge sitting without a jury and the corporation and third-party defendants appealed from the judgment. The estate filed a cross appeal. We granted the application of the corporation and third-party defendants for direct appellate review.

The corporation and the surviving shareholders assert that the agreement was intended to operate as a liquidation and final release of any future claims by Lubin's estate. The estate argues that the agreement only provided for the amount to be paid for the redemption of Lubin's shares. The estate also asserts the following claims: (I) breach of the stock purchase agreement; (II) breach of an employment agreement; (III) quantum meruit for services rendered by Lubin; (IV) breach of fiduciary duty; and (V) breach of contract.

The judge ruled that the agreement extinguished all claims of Lubin's estate on payment by the corporation to the estate of two million dollars. With respect to the estate's claims, the judge ruled the corporation violated the stock purchase agreement (count I) because it failed to deliver the insurance proceeds

---

forth in this Agreement. This Agreement supersedes all previous understandings, agreements, and representations between the parties regarding the subject matter hereof.

"5. *Applicable Law*

"This Agreement is drawn to be effective and shall be construed in accordance with the law of the Commonwealth of Massachusetts.

"IN WITNESS WHEREOF, the corporation has caused this Agreement to be signed by its duly authorized officer and its corporate seal to be affixed hereto, and the Stockholders have hereunto set their hands and seals, all as of [August 26, 1988].

> "LUBIN AND MEYER
>
> "A PROFESSIONAL CORPORATION
>
> "By: /s/ Philip J. Crowe, Jr.,
>
>> "President
>>
>> "/s/ Donald M. Lubin
>>
>> "/s/ Philip J. Crowe, Jr.
>>
>> "/s/ Andrew C. Meyer, Jr."

until nearly one year after Lubin's death.[4] The judge further ruled that, because of the corporation's breach, the estate retained rights as a shareholder, and the judge awarded damages on count IV in the amount of one-third of the dividends earned while the estate remained a stockholder.[5] In addition, the judge awarded interest on the insurance proceeds for the period that they remained unpaid to the estate.

1. We briefly summarize the relevant facts found by the judge. The corporation was formed in 1988 as a professional corporation engaged in the practice of law in Massachusetts. The corporation had previously operated as a general partnership specializing in personal injury litigation. The partnership had been created in 1974 by Lubin and Meyer, who maintained at all times an informal oral agreement to share equally the net income generated from the firm.[6] When Crowe later joined the partnership in 1981, Lubin, Meyer, and Crowe agreed to share profits in three equal shares.[7] There had never been a written partnership agreement.[8] For the most part the corporation maintained the informal equal income sharing arrangement established while it had been a partnership.[9]

Before the partners incorporated the law firm, the partnership

[4]After the corporation determined that the issues in the case would not be resolved until after June, 1991, over one year after Lubin's death, it tendered the proceeds to the estate on June 18, 1991, before the judgment entered in this case.

[5]After ruling that the corporation was entitled to declaratory judgment on its interpretation of the agreement, the judge dismissed the estate's claims based on quantum meruit (count III) and breach of an employment contract (count II). The judge also dismissed the estate's claim of breach of contract (count V) based on alleged statements by Meyer to Lubin's spouse. The estate has not sought appellate review of this determination.

[6]The partners agreed orally that distributions would be made when both agreed that the corporation's available funds exceeded foreseeable expenses.

[7]The partners decided to share equally with Crowe all profits attributable to cases opened by the partnership *after* January 15, 1981, the date Crowe joined the partnership. The partners agreed that profits generated from cases opened before that date would continue to be distributed equally between Lubin and Meyer.

[8]In addition to the partners' equal sharing arrangement, the partners maintained other informal agreements to distribute profits among various salaried employees from time to time.

[9]The judge specifically found, "Over the years Lubin and Meyer and later Lubin, Meyer and Crowe acted as though they were partners in the operation of a law firm and that their total compensation would consist of a sharing in the distribution of the net profits of that partnership." The judge continued,

acquired "key man" life insurance policies on Lubin, Meyer, and Crowe in 1982. After incorporation, the corporation replaced the partnership as the owner and designated beneficiary of the policies and deducted the premiums as a business expense.

In 1988, the corporation and Meyer, Crowe, and Lubin entered in the stock purchase agreement.[10] The following provision is central to the resolution of the question whether payment of the insurance proceeds constituted a complete satisfaction of all claims held by the estate:

> "It is agreed between and among the three Stockholders that if one of the Stockholders is to die, that the purchase price for *any and all interest that Stockholder has in the corporation by way of shares and any other interest including that of descendants, heirs and assigns, shall be satisfied by the payment of the death benefit paid pursuant to said life insurance,* which death benefit shall be maintained as a minimum of Two Million Dollars for each Stockholder unless otherwise agreed by Stockholders" (emphasis added).

The judge concluded that the agreement obligated the corporation to pay to the deceased shareholder's estate the insurance proceeds, and that such payment would serve as total compensation to the estate for its entire interest in the corporation.

*2. The estate's appeal.* The estate argues that the judge's ruling that the agreement barred all claims was error. The judge made comprehensive written findings of fact, which will not be set aside unless clearly erroneous. See Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

The judge found that the agreement was intended to resolve fairly and finally all interests of Lubin's estate. Specifically, the judge credited Meyer's testimony that the inclusion of the clause "and any other interest" was added further to clarify the parties' mutual intention that the agreement operate as a final

"There was no separate understanding or agreement regarding any additional rights that they might have as officers, directors, stockholders or employees of the Corporation or the law firm."

[10]General Laws c. 156A, § 12 (*a*), provides in pertinent part: "It shall be provided in the articles of organization or by-laws of a professional corporation, or in agreement binding upon all of its shareholders, that the corporation shall redeem all of the shares of a shareholder upon the occurrence of . . . such shareholder['s] death . . . ."

release. The judge, having heard the testimony, was in the best position to evaluate the witnesses' credibility. *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 201 (1993). The judge was correct that, on receipt of the insurance proceeds, the agreement barred the estate from asserting any additional claims against the corporation.[11]

The estate asserts that the agreement was nothing more than a redemption agreement, designating a purchase price for the deceased shareholder's stock, pursuant to G. L. c. 156A, § 12 (*a*), because G. L. c. 156A, § 12 (*d*), preserves its claims against the corporation based on other theories of recovery. We do not agree.

The estate emphasizes that G. L. c. 156A, § 12 (*d*), provides: "Nothing herein shall affect the obligations of a professional corporation to a shareholder whose interest in the corporation is terminated hereunder *with respect to compensation, benefits or other matters accrued prior to his termination or disqualification*" (emphasis supplied). Section 12 (*d*) says nothing about precluding a redemption agreement from operating additionally as a release, while providing a value for redemption of a deceased shareholder's stock.

3. *The corporation's appeals.* The corporation challenges the judge's conclusion that the agreement required it to pay the insurance proceeds to the estate as soon as it was reasonably able to do so after Lubin's death. Therefore, it asserts, judgment for the estate on its breach of contract claim was error. The corporation argues that (1) pursuant to G. L. c. 156A, § 12 (*b*), it was allowed to tender payment any time within a twelve-month period, and (2) it was relieved of paying the estate, or otherwise excused from immediate payment, because the estate had an obligation to execute a release before its right to the proceeds arose.

The agreement did not state when the estate was required to tender the deceased shareholder's stock, nor did it specify when after a shareholder's death the corporation was required to pay the insurance proceeds to the estate. However, the articles of organization required that the redemption take place as soon as reasonably possible. The judge properly concluded that, in the

---

[11]Based on our conclusion that the judge's ruling that the agreement precluded any additional claim by the estate was not erroneous, we must similarly uphold his dismissal of the estate's claims based on quantum meruit (count III) and breach of employment agreement (count II).

absence of a designated time for performance specified in the agreement, the corporation was obligated to tender payment to the estate as soon as was reasonably possible. See *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 125 (1974) (inferring reasonable time for performance absent specific agreement).

The corporation was not entitled to withhold the insurance proceeds for nearly one year after Lubin's death on the basis of the language in G. L. c. 156A, § 12 (*b*), requiring that redemption take place within twelve months of the shareholder's death. According to § 12 (*b*), the corporation was required to redeem the stock "within twelve months after [the shareholder's death], *unless a shorter time is specified in the articles of organization, by-laws or said shareholder agreement*" (emphasis added). Thus, the twelve-month period was not applicable here where, as noted above, the articles of organization of the corporation required redemption "as soon as reasonably possible."[12]

The corporation received the proceeds of the policy on July 28, 1990.[13] Once received, the corporation had a duty to tender payment to the estate as soon as it was reasonably able to do so. The judge found that the corporation was "reasonably able" to make payment on August 10, 1990. We see no basis to quarrel with the judge's conclusion that fourteen days after the corporation received the proceeds on July 28, 1990, was a reasonable time within which payment should have been made.

We reject, as did the judge, the corporation's argument that the agreement imposed on the estate, as a precondition for payment, an obligation to execute a release or to assure the corporation that it would do so prior to receiving payment of the insurance proceeds.

The agreement contained no requirement that the estate execute a release as a precondition to its right to receive the insurance proceeds. The corporation was not entitled to withhold its performance for one year on the basis of the fact that the estate challenged, in good faith, the effect of the agreement.

4. *Remedy for breach.* Although the judge was correct in ruling the corporation in breach of the agreement, his conclusion

[12]The articles stated that, in the event that a shareholder becomes ineligible or deceased, "the administrator or other legal representative . . . shall dispose of [the deceased's] shares as soon as reasonably possible."

[13]Neither the parties' briefs nor the record contains a precise date on which the corporation filed the insurance claim.

that the consequence of this action placed the estate in the "position of a stockholder until June, 1991," was error. General Laws c. 156A, § 12 (e), does not confer such status on a deceased shareholder's estate. That § 12 (e) allows a shareholder's estate to vote the decedent's shares does not compel the conclusion that, during that temporary period, the estate is entitled to receive dividends. Such a conclusion would be contrary to the provisions of S.J.C. Rule 3:06 (2) (a), as appearing in 382 Mass. 765 (1981), which requires all shareholders of such a corporation to be licensed to practice law in the Commonwealth.

Furthermore, for the estate to receive dividends from the corporation would contravene the prohibition against fee sharing among nonlawyers. See S.J.C. Rule 3:07, Canon 3, as appearing in 382 Mass. 777 (1981) (Code of Professional Responsibility incorporating the Canons of Ethics and Disciplinary Rules). Moreover, the requirement under S.J.C. Rule 3:06 (2) (b), as appearing in 382 Mass. 766 (1981), that the estate turn over the deceased's stockholder's shares *as soon as is reasonably possible*, underscores the impropriety of the estate retaining participatory shareholder status. The estate had only a limited ability to vote the shares until redemption under G. L. c. 156A, § 12 (e), and a right to receive value for the stock under G. L. c. 156A, § 12 (c).

5. *Conclusion.* Because the estate did not receive the payment due within a reasonable time, it is entitled to interest calculated from the date on which the corporation was reasonably able to make payment. We affirm the declaratory judgment in behalf of the corporation and the judgment against the corporation for breach of the stock purchase agreement with interest from August 10, 1990, to June 18, 1991. We vacate the judgment against the corporation for breach of fiduciary duty (count IV) and the case is remanded to the Superior Court for the entry of an order dismissing that claim.

*So ordered.*