DISCOVER REALTY CORPORATION *vs.* STEPHEN T. DAVID,
trustee.[1]

No. 98-P-357.

Norfolk. April 11, 2000. - June 30, 2000.

Present: BROWN, GREENBERG, & GELINAS, JJ.

*Broker,* Commission. *Contract,* With broker, Sale of real estate, Performance
and breach. *Consumer Protection Act,* Availability of remedy, Unfair act or
practice.

In a claim under G. L. c. 93A, the judge's contradictory findings did not sup-
port a conclusion that the conduct of a seller of real property, an
experienced real estate attorney, did not rise to the level of an unfair act or
practice: the case was remanded for reconsideration and clarification of the
judge's findings and conclusions, under the appropriate standard. [537-538]

CIVIL ACTION commenced in the Superior Court Department on
August 29, 1995.

The case was heard by *Wendie I. Gershengorn,* J.

*Gregory M. Doyle* for the plaintiff.

*Barry S. Scheer* for the defendant.

BROWN, J. The only issue properly before us concerns the
propriety of the judge's conclusion that the seller's conduct did
not rise to the level of a G. L. c. 93A violation.[2]

On February 25, 1995, the seller (David) granted to the broker

---

[1]Of the DNR Realty Trust.

[2]The second issue raised on appeal by the plaintiff broker — whether the
judge erred in finding that an agreement concerning payment of a commission
had been modified — raises a question of fact. See *Roddy & McNulty Ins.
Agency, Inc.* v. *A.A. Proctor & Co.,* 16 Mass. App. Ct. 525, 536 (1983). A
judge's findings of fact will not be set aside unless clearly erroneous. *Lubin &
Meyer, P.C.* v. *Lubin,* 427 Mass. 304, 308 (1998). As the plaintiff has failed to
provide this court with a transcript of the evidence presented at trial, we are
unable to assess whether any of the findings were clearly erroneous, and we
assume that the findings are adequately supported by the evidence. *Connolly*
v. *Connolly,* 400 Mass. 1002, 1003 (1987).

(Discover) an exclusive right to sell Lot 1 on Sampson Circle (also known as Sprague Street) in Dedham.[3] At the time, a paper street known as Hemlock Street abutted Lot 1 along its entire back length. When the seller entered into the listing agreement with the broker, he represented that he had obtained releases from the three abutting property owners of their rights in Hemlock Street. In fact, this representation was false. Of the three abutters to Hemlock Street, only two had agreed to release their rights and the seller was "in the process of obtaining" the third release.[4] In marketing the property, the broker relied upon this false representation.

On April 21, 1995, the broker produced the DeChristofaros, buyers who were ready, willing, and able to purchase Lot 1 at a price (the full asking price) and terms agreeable to the seller.[5] On the same day, the seller and the DeChristofaros entered into a purchase and sale agreement in which the seller agreed to pay the broker a commission of $11,250, which was five percent of the sales price.

In paragraph 43 of the purchase and sale agreement, the seller, who was an experienced real estate attorney, warranted and represented that "releases have been received from any abutters having rights in [Hemlock] street and that . . . any releases have been recorded with the Norfolk County Registry of Deeds."

The seller, who did not have the three releases "in hand," subsequently ignored a number of requests from the DeChristofaros' attorney to produce copies of the documents allegedly recorded at the registry of deeds. Unable to perform, the seller

---

[3]In the listing agreement, the seller agreed to pay the broker a five percent commission if during the listing period the broker procured a buyer ready, willing, and able to purchase the property on terms and at a price acceptable to the seller, *regardless of whether the transaction proceeded.*

[4]The seller's efforts to obtain the third release ultimately failed. The judge did not make any finding as to whether the seller's representation was made negligently, recklessly, or intentionally. For purposes of this appeal, we have assumed that the judge found implicitly that the misrepresentation *to the broker* was made negligently.

[5]The DeChristofaros, who had apparently expressed deep concern about the possibility of strangers traipsing all over the backyard of Lot 1, had been assured by the broker and the seller that the paper street had been abandoned by the town of Dedham and that the seller had obtained *in hand* the necessary releases from any abutters who had rights in the street. This assurance, the judge found, induced the DeChristofaros to enter into the final purchase and sales contract.

defaulted and returned the DeChristofaros' deposit. The seller refused to pay the broker's commission for procuring the DeChristofaros. In the fall of 1995, the broker sold Lot 1 to different buyers and received a "proportional commission" for its role in co-brokering the sale.[6]

Based upon these subsidiary findings, the judge found that the seller had engaged in "wrongful conduct" by misrepresenting the status of the three releases to the broker at the time the listing agreement was executed and at the time the purchase and sale agreement was entered into, and that that misrepresentation had prevented the closing of the DeChristoforo sale. Therefore, she concluded, the broker came within the exception to the *Tristram's Landing* rule (*Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 627 [1975]) requiring that a sale be actually consummated for a commission to be due, and was entitled to the commission specified in the listing agreement. See *Hillis* v. *Lake*, 421 Mass. 537, 545-546 (1995) (if seller's wrongful conduct prevents the closing, broker is entitled to commission).[7]

The judge went on, however, to conclude that the seller's misrepresentation, upon which the broker's c. 93A claim was premised, did not descend to the level of an unfair and deceptive act or practice within the meaning of G. L. c. 93A, § 2(*a*), because she found that the elusive third release was unnecessary to sell Lot 1 as a marketable title.[8] The findings, as they now stand on the record before us, are sketchy and ambivalent and do not support that result.

First, the judge's c. 93A analysis is devoid of any reference to or acknowledgment of her earlier findings concerning the seller's "false representation" of fact, his "wrongful conduct," and the broker's reliance upon the seller's misrepresentation in marketing the property and inducing the DeChristofaros to enter the purchase and sales agreement. Those subsidiary findings

---

[6]The exact amount of that commission is not disclosed on this record.

[7]So far as appears on the record before us, in order to resolve the issue of the broker's entitlement to a commission, there was no need to reach the issue whether the seller's conduct fell within the *Hillis* exception. Pursuant to the express terms of the listing agreement executed by the seller, the broker was entitled to a commission upon the procurement of a ready, willing, and able buyer without the necessity of title actually passing.

[8]In making her c. 93A fairness determination, the judge applied an incorrect standard. The judge should have focused on "the nature of [the] challenged conduct and on the purpose and effect of that conduct." *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 420 Mass. 39, 42 (1995).

conflict with the judge's conclusion that the seller's conduct was not unfair or deceptive. Compare *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 616-619 (1994).

Second, the judge's finding that the third release was "not necessary in order to sell Lot 1 with clean title," if read as a finding that the seller's false representation was immaterial, does not comport with her earlier finding that the same misrepresentation prevented the DeChristofaro sale from closing, thereby entitling the broker to a commission. To the extent that the language is read as a finding that the broker suffered no detriment from the seller's misrepresentation, that conclusion is contradicted by her earlier ruling and finding that the broker was entitled to a full commission of $11,250 with respect to the DeChristofaro transaction.[9]

The reasons the judge concluded that the seller's misrepresentation did not constitute a c. 93A violation were ultimately left unexplained in her decision. Compare *Heller Financial* v. *Insurance Co. of N. America*, 410 Mass. 400, 409 (1991); *Shawmut Community Bank, N.A.* v. *Zagami*, 30 Mass. App. Ct. 371, 375-377 (1991), *S.C.*, 411 Mass. 807 (1992). We appreciate that "not every unlawful act is automatically an unfair (or deceptive) one under G. L. c. 93A." *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979). *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). However, if that is the basis for the judge's decision, it requires further explication.

Accordingly, we reverse the judgment on count V finding the seller not liable for a violation of G. L. c. 93A, § 11, and remand the case for a reconsideration of the findings and conclusions under the appropriate standard and for a clarification and more comprehensive and connected explanation of the c. 93A subsidiary findings with respect to the issues of materiality, causation, and detriment. The judgments on the other claims are affirmed.

*So ordered.*

---

[9]As to detriment, there was testimony that the broker was concerned about the loss of his professional reputation in the brokerage community. Compare *Bump* v. *Robbins*, 24 Mass. App. Ct. 296, 310-312 (1987) (broker undertook a course of conduct — unknowingly disseminating false information to prospective buyers that had been provided by the seller — he would not otherwise have followed).