NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-634                                        Appeals Court

DANIEL DUFF & another[1]  vs.  JOHN McKAY & others.[2]

No. 15-P-634.

Plymouth.     January 19, 2016. - June 14, 2016.

Present:  Grainger, Rubin, & Milkey, JJ.

Contract, Settlement agreement, What constitutes, Performance
        and breach.  Judgment, Implementing settlement agreement.

Civil action commenced in the Superior Court Department on
April 9, 2013.

A motion to enforce settlement and to dismiss the complaint
was heard by Beverly J. Cannone, J., and entry of separate and
final judgment was ordered by her.

Stephen W. Rider for the plaintiffs.
Colin Black for the defendants.

MILKEY, J.  In 2010, plaintiffs Daniel and Lisa Duff hired

the defendants to perform a renovation project at their home in

_____

[1] Lisa Duff.

[2] McKay Construction Company, LLC, and Artisan Kitchen
Design, Inc.  Two additional defendants were dismissed before
the appeal was filed.

Hingham.  A dispute ensued regarding the defendants' workmanship and their alleged failure to obtain a building permit in a timely manner.  In May of 2012, the Duffs sought redress by initiating arbitration through the State program created in accordance with G. L. c. 142A.[3]  The following year, on the eve of the assigned arbitrator's scheduled view of the property, the parties reached an apparent settlement of their dispute.  Nonetheless, a formal settlement document was never executed because of a disagreement regarding payment terms.  When the parties reached an impasse in resolving that issue, the Duffs withdrew their request for arbitration and filed a multicount action in the Superior Court asserting their underlying claims.  The defendants moved to dismiss the action and to enforce the settlement.  A Superior Court judge allowed that motion and entered judgment requiring the defendants to pay the agreed-to amount within ten days.  On the Duffs' appeal, we affirm.

Background.  The parties' key communications were memorialized in electronic mail messages (e-mails), copies of which were submitted to the motion judge.[4]  As a result, the

_____

[3] Pursuant to G. L. c. 142A, § 4, the director of the Office of Consumer Affairs and Business Regulation created an arbitration program through which homeowners can resolve disputes with home improvement contractors they hired.  See 201 Code Mass. Regs. §§ 14.00 et seq. (2003).

[4] The e-mails were attached to the parties' affidavits, and their authenticity has not been questioned.

essential facts pertaining to the parties' negotiations are uncontested.

At the heart of this case is a March 21, 2013, e-mail exchange between counsel that followed extended and vigorous settlement discussions. Counsel for the Duffs wrote to "confirm what I believe our respective clients have agreed to." He then listed six terms. Key among those terms were the requirements that the defendants pay the Duffs $27,500, and that the parties "exchange mutual general releases, subject only to the obligations in the settlement agreement."[5] The list of terms did not specify when payment of the $27,500 was due.

The Duffs' counsel concluded his e-mail by asking his counterpart to "confirm that I got this right by return e-mail." Six minutes later, the defendants' counsel responded, "Confirmed." Six minutes after that, the Duffs' counsel sent an e-mail to the assigned arbitrator canceling the scheduled site visit because "I am pleased to report that the parties have reached a settlement agreement." The following morning, the coordinator for the arbitration program sent an e-mail to express her happiness "that the parties have settled," and she requested clarification whether she should "consider this your

---

[5] The remaining terms addressed the return of a wood countertop to the defendants, confidentiality and mutual nondisparagement provisions, the retraction of certain comments that the Duffs had made to the Better Business Bureau, and the dismissal with prejudice of any arbitration claims.

formal notice of settlement or will you mail written notice of the settlement." Counsel for the Duffs responded by stating:

> "I believe the parties are planning on preparing and signing a formal settlement agreement and then will file a stipulation of dismissal, with prejudice, of the claims in the arbitration. This may take a week or so."

Over the next two and one-half weeks, the parties sought to complete a formal settlement document. During that time, counsel for the Duffs expressed concern over delay, stating that he did not "want to give the clients too much time to rethink this." As the Duffs acknowledge, some of the delay was caused by a medical issue related to the defendants' counsel's family.

In the end, the parties agreed on every provision of the final settlement document save one: when precisely payment of the $27,500 was required. The Duffs insisted that payment be made when the agreement was executed, while the defendants insisted that they be given some time to complete payment. Each side asserted that its position was consistent with customary practice. In addition, each attorney asserted that his counterpart should have raised the payment issue before an apparent settlement had been reached if the issue had been important to his client. As of April 8, 2013, the state of play was as follows: the defendants were willing to pay a majority

of the money ($17,500) the following day,[6] with the remaining payment to be made three weeks later (April 30, 2013), while the Duffs continued to insist that the full amount be paid "immediately."[7]

With the final issue at a seeming impasse, the Duffs on April 8, 2013, terminated the still-pending arbitration proceeding by withdrawing their request for arbitration.[8] The following day, they filed the current action in Superior Court. Notably, their complaint did not allege that the parties had reached a settlement agreement, with payment due immediately. Instead, without mentioning the putative settlement agreement or the abandoned arbitration proceedings, the complaint simply set forth the Duffs' underlying claims with regard to the defendants' work on the renovation project (alleging violations of G. L. c. 93A, breaches of contract, negligence, and misrepresentation).

---

[6] In fact, the defendants had already cut a bank check for that amount dated April 8, 2013, a copy of which was sent to the Duffs' counsel by e-mail that day.

[7] The Duffs did state that they would be willing to accept the defendants' proposed payment schedule if the total amount paid were increased to $30,000 and various measures were instituted to secure payment.

[8] The Code of Massachusetts Regulations provides that either party (the homeowner or contractor) may withdraw without prejudice from arbitration "at any time prior to the hearing." 201 Code Mass. Regs. § 14.12 (2003).

In response, the defendants filed what was styled as a motion to enforce the settlement agreement and to dismiss the complaint. The motion was supported by an affidavit from counsel setting forth the history of the negotiations as memorialized in the trail of e-mails. In opposing the motion, the Duffs submitted an affidavit from their own counsel that covered the same uncontested e-mail history. However, counsel also set forth his view, based on his experience, that "attorneys presume that payment of settlement proceeds will be made at the time the settlement agreements are finalized and releases exchanged" unless the paying party requests additional time before the settlement is reached. Daniel Duff himself also executed an affidavit in which he stated that in authorizing settlement, he had "understood" that payment would be due when formal settlement papers were signed and that he otherwise would not have agreed to settle the case for $27,500.

A Superior Court judge eventually allowed the defendants' motion and entered judgment requiring the defendants to pay the settlement amount within ten days.[9] Dissatisfied with that result, the Duffs appealed.

---

[9] The docket reflects that one Superior Court judge had ruled that an evidentiary hearing on the motion should be held and such a hearing was scheduled on numerous occasions, but then postponed. The motion eventually was heard and resolved by a different judge after a nonevidentiary hearing held on December

Discussion. 1. Procedural posture and standard of review. We begin by reviewing the procedural posture in which this case has come before us. "A settlement agreement is a contract and its enforceability is determined by applying general contract law." Sparrow v. Demonico, 461 Mass. 322, 327 (2012). In entering judgment enforcing the parties' apparent settlement agreement, the judge in effect resolved a contract claim put forward by the defendants even though that claim was presented by motion, not as a counterclaim. The case law suggests that such informality is acceptable where settlements have been reached while litigation is pending. See Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 211-212 (2008) (affirming allowance of "motion to enforce settlement agreement"). See also Fidelity & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008) ("[B]efore the original suit is dismissed, the party seeking to enforce the [settlement] agreement may file a motion with the trial court"). Whether this practice is appropriate where, as here, the settlement was negotiated prior to the commencement of litigation is arguably a

23, 2013. The Duffs did not provide a transcript of that hearing with their appeal.

different matter.  We need not resolve that question, as the Duffs do not press this issue on appeal.[10]

That said, the parties do debate the applicable standard of review.  As the defendants point out, there is case law to suggest that in enforcing settlement agreements, judges enjoy substantial leeway to resolve open issues and to dispose of the matter summarily.  See Fidelity & Guar. Ins. Co., supra.  See also Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987) (noting "inherent power" of courts to oversee and enforce settlement agreements).  The Duffs counter that even to the extent that might be true with regard to settlements of pending litigation, ordinary procedural rules apply to the enforcement of any out-of-court agreements reached prior to the commencement of litigation.  See In re Mal de Mer Fisheries, Inc., 884 F. Supp. 635, 637 (D. Mass. 1995) ("The court's inherent power of enforcement, however, is limited to cases pending before it").  Because the judge here enforced a prelitigation settlement agreement without an evidentiary hearing, the Duffs argue that the judge in effect treated the

---

[10] Thus, for example, the Duffs do not challenge the form of the disposition (a judgment in their favor for the settlement amount).  They seek only to repudiate the settlement agreement in its entirety.

defendants' motion as one for summary judgment and that his ruling must be reviewed as such.[11]

Under the circumstances of this case, we agree with the Duffs that the defendants' motion should be treated as akin to one for summary judgment. Thus, we review the allowance of the defendants' motion de novo, to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).[12]

2. Merits. The Duffs rest their appeal on two alternative theories that lie in tension with each other. One is that because the parties never agreed on a specific date when payment was due, any agreement they had reached was too indefinite to constitute an enforceable contract. Without an enforceable contract in place, they argue, they were free to sue on their

---

[11] The judge did not require the parties to comply with Superior Court Rule 9A. Although the Duffs touched on that issue below, they have not pressed it on appeal.

[12] "That some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material." Hudson v. Commissioner of Correction, 431 Mass. 1, 5 (2000), quoting from Beatty v. NP Corp., 31 Mass. App. Ct. 606, 607 (1991). "A fact is 'material' only if it might provide a basis for a fact finder to find in favor of the [nonmoving] party." Liss v. Studeny, 450 Mass. 473, 482 (2008).

underlying claims.  The Duffs' other theory is that the two sides reached a fully enforceable agreement on March 21, 2013, with payment due immediately upon execution of a formal document memorializing that agreement.  According to the Duffs, the defendants breached the agreement by refusing to make timely payment, and this breach justified the Duffs in repudiating the agreement.  We address these arguments in order.

a.  Whether there was an enforceable settlement agreement. The legal standard for whether an enforceable agreement has been reached is well established.  "An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).

There is no suggestion in the record that the parties ever discussed when payment of the agreed-to settlement amount would be due.[13]  To the contrary, each side faults the other for not raising the issue sooner.  However, "the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract."  Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000).  The determinative question is whether the absence of an agreed-upon specific payment date

_____

[13] Nor do the Duffs make any claim that they had informed the defendants that time was of the essence in completing payment.

meant that "significant, material terms were still to be negotiated." Ibid. If so, then no contract was formed. See, e.g., Rosenfield v. United States Trust Co., 290 Mass. 210, 216-217 (1935) (no contract where parties had not agreed on all material terms). If, instead, the date for payment was a "subsidiary matter[]" that did not alter the essential nature of the bargain, then there was a contract that could be enforced (so long as the parties also intended to be bound at the time an agreement was reached). McCarthy v. Tobin, 429 Mass. 84, 86 (1999). Where, as here, the negotiations were memorialized in a trail of uncontested e-mails, whether the parties agreed on all material terms is treated as a question of law that we review de novo. Basis Technology Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008).[14] Accord Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. at 212 ("[E]-mail exchanges between the parties formed a clear and complete agreement . . . [under which t]he material terms were set and agreed upon").

---

[14] The Duffs cannot create a dispute of material fact by setting forth their own understanding of when payment would be due under the settlement agreement. As we recently reiterated and "Justice Holmes said more than one century ago, a party's 'private understanding or intent' regarding the meaning of a contract is 'immaterial.'" Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 245 (2013), quoting from Equitable Marine Ins. Co. v. Adams, 173 Mass. 436, 438 (1899). See Beatty v. NP Corp., 31 Mass. App. Ct. at 612 ("[C]ontracts rest on objectively expressed manifestations of intent").

The case law recognizes a number of principles that help inform the analysis of whether an absent term renders an agreement fatally indeterminate.  First, that question is to be addressed based on the status of things at the time the parties signaled that an agreement had been reached.  See Shea v. Bay State Gas Co., 383 Mass. 218, 223 (1981), quoting from Bryne v. Gloucester, 297 Mass. 156, 158 (1937) (contracts should be interpreted "with reference to the situation of the parties when they made it").  See also McCarthy v. Tobin, supra at 87-88 (offer to purchase real estate was binding despite subsequent dispute over entering into purchase and sale agreement).  The fact that the negotiations eventually were scuttled over an issue does not mean that it necessarily was an essential term of the settlement.

Second, seeming indeterminacy can be resolved by reference to professional norms in the practice area in which the remaining disputes lie (to the extent such norms exist).  See, e.g., McCarthy v. Tobin, supra at 87, quoting from Goren v. Royal Invs., Inc., 25 Mass. App. Ct. 137, 141 (1987) (fact that terms of purchase and sale agreement had yet to be negotiated did not preclude binding agreement based on acceptance of offer because "norms exist for their customary resolution").

Third, where a written agreement fails to specify a deadline by which a contractual obligation or right must be

exercised, courts may infer that the parties intended a "reasonable" date if this can be done without changing the essence of the contract. See Plymouth Port, Inc. v. Smith, 26 Mass. App. Ct. 572, 575 (1988); Middleborough v. Middleborough Gas & Elec. Dept., 47 Mass. App. Ct. 655, 658 (1999).[15] In turn, "[w]hat is a reasonable period of time depends on the nature of the contract, the probable intention of the parties, and the attendant circumstances." Plymouth Port, Inc. v. Smith, supra.

With these principles in mind, we conclude as a matter of law that the agreement the parties reached in their March 21, 2013, e-mail exchange was not fatally indefinite. See Basis Technology Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. at 38-39 (concluding that settlement agreement was sufficiently definite even though it left open specific ratio for converting one type of stock to another). Indeed, the Duffs themselves maintain, supported by their counsel's affidavit, that background professional norms exist through which the specific payment date could have been determined. Even if resort to professional norms alone would not have resolved the extraordinarily limited

---

[15] This principle has long been recognized. See, e.g., Atwood v. Cobb, 16 Pick. 227, 231 (1835) ("As to the uncertainty of the time, at which the agreement is to be executed, the case is clear, that where on an executory contract, a party stipulates to do some act, and no time is limited, it is to be done within a reasonable time, and, therefore, the want of any stipulation to that effect does not render the instrument void").

remaining dispute, this could have been resolved -- without altering the essential terms of the parties' settlement -- based on what was "reasonable."[16]  Therefore, we conclude that the March 21, 2013, e-mail exchange included "terms sufficiently complete and definite."  Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. at 428.[17]

To enforce the terms of the March 21 agreement, the defendants also must demonstrate "a present intent of the parties at the time of formation to be bound by those terms." Ibid.  This issue requires little discussion.  Although the parties appear to have contemplated that they would memorialize their agreement in a formal settlement document,[18] neither side

---

[16] We note that when the settlement fell apart, the matter was still in arbitration.  The parties presumably could have sought a speedy resolution of the single remaining issue from the assigned arbitrator.

[17] Because the Duffs have sought to avoid the settlement agreement, not to enforce it, we need not "fill in the blank" of when precisely payment had to be completed.  Thus, we need not decide which party had the more compelling claim regarding that payment date.  Moreover, we need not address the Duffs' contention that resolving exactly when payment was due might involve factual disputes that fall to a jury to resolve. Compare Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. at 431-432 (resolving as matter of law when settlement payment was due where agreement was ambiguous on that point).  See generally Powers, Inc. v. Wayside, Inc. of Falmouth, 343 Mass. 686, 691 (1962) (determining what is "reasonable" period to exercise contractual right is generally question of fact, but it becomes one of law where facts are undisputed).

[18] The statement by the Duffs' counsel to the arbitration coordinator that "I believe the parties are planning on

suggested that it would not be bound until that document was executed. See <u>McCarthy</u> v. <u>Tobin</u>, 429 Mass. at 87, quoting from <u>Goren</u> v. <u>Royal Invs., Inc.</u>, 25 Mass. App. Ct. at 140 ("If . . . the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract"). Contrast <u>Blomendale</u> v. <u>Imbrescia</u>, 25 Mass. App. Ct. 144, 146-147 (1987) (no enforceable contract to purchase property where check for buyer's deposit could be cashed only upon execution of purchase and sale agreement, and where "sketchy preliminary document . . . . [left] many points uncovered"). Instead, the Duffs' counsel informed the arbitrator, without qualification, "that the parties have reached a settlement agreement." Like a report of a settlement to a trial court, a report of a settlement to an arbitrator "presumably comes from careful reflection and contemporaneous acceptance of an agreement." <u>Basis Technology Corp</u>. v. <u>Amazon.com, Inc</u>., 71 Mass. App. Ct. at 43. "This court's decisions have consistently emphasized the qualities of seriousness and commitment characterizing a settlement agreement reported to a trial court." <u>Id</u>. at 42. Both parties exhibited

preparing and signing a formal settlement agreement" may cast some doubt on whether a formal agreement initially was contemplated. However, if anything, this cuts against the Duffs' argument that they had not agreed to be bound by a sufficiently definite settlement agreement.

their intent to be bound by the March 21 settlement agreement, and each party could have enforced that agreement.

b. The Duffs' alternative theory. As noted, the Duffs alternatively argue that background professional norms establish that the parties agreed that final payment would be made when the formal settlement agreement was executed. Based on that premise, the Duffs contend that the defendants breached that agreement, and that this breach justified the Duffs in repudiating the agreement. For purposes of assessing this alternative theory, we accept arguendo the Duffs' premise that the defendants were at fault for insisting that they be given three weeks to complete payment.[19] However, this does not in the end assist the Duffs, because they are seeking to repudiate the settlement agreement, not to enforce it.

A party to a contract generally is relieved of his obligations under that contract only when the other party has committed a material breach, that is, "a breach of 'an essential and inducing feature of the contract[].'" Lease-It, Inc. v. Massachusetts Port Authy., 33 Mass. App. Ct. 391, 396 (1992), quoting from Bucholz v. Green Bros., 272 Mass. 49, 52 (1930).

---

[19] The Duffs highlight that when the agreement fell apart, eighteen days had already elapsed since the March 21 e-mail exchange. However, even under the Duffs' own view of the case, they would not be receiving payment until a formal agreement was finalized and executed. There was no agreed-upon deadline for that to occur (only a voiced expectation that finalizing the agreement likely would take "a week or so").

"When a party to an agreement commits an immaterial breach of that agreement, the injured party is entitled to bring an immediate action for damages; it may not stop performing its obligations under the agreement." Lease-It, Inc. v. Massachusetts Port Authy., supra. "[O]nly a material breach of a contract . . . justifies a party thereto in rescinding it." Ibid., quoting from 6 Williston, Contracts § 829 (3d ed. 1962).

For the reasons set forth above, a specific deadline by which full payment of the settlement sum would be due was not a material term of the March 21, 2013, agreement. It follows that even if the defendants' demand that they be given three weeks to complete payment were considered an actual breach of the agreement,[20] this would not be a material breach, and the Duffs still would not have been entitled to repudiate the settlement agreement. Their remedy for such a breach would have been for enforcement of the agreement and damages (including statutory

---

[20] Arguably, even if the parties had agreed that the settlement payment would be due immediately upon execution of the formal settlement document, the defendants still had committed only an anticipatory breach (for which the remedy would have been, at most, enforcement of the contract). See K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 253-254 (2014). In K.G.M. Custom Homes, Inc., supra at 249, 253, an anticipatory breach "morphed" into an actual breach, because the offending party's efforts to "scuttle the deal" amounted to a breach of the implied covenant of good faith and fair dealing. The Duffs have not raised such a claim.

interest from the date of the breach).[21]  The Duffs have not sought such remedies, seeking instead to avoid the settlement agreement and to bring their underlying claims.  The only remedy the Duffs have pursued is not available to them.[22]

Judgment affirmed.

---

[21] The Duffs argue that the defendant materially violated the settlement agreement by insisting that their interpretation be accepted before the settlement were implemented.  However, the same logic would apply to the Duffs (who, after all, were equally insistent that their interpretation be adopted).

[22] Because the Duffs' appeal is not frivolous, we deny the defendants' request for appellate attorney's fees and costs.

GRAINGER, J.  (concurring).  I agree with the result of the majority opinion because I conclude that the plaintiffs' behavior was commercially unreasonable and tantamount to a breach of the settlement agreement.  The protracted nature of the parties' dispute before they agreed to a settlement is irrelevant to this appeal.  The plaintiffs have raised only two issues:  (1) Whether the payment schedule was a material part of the settlement, and (2) Whether the defendants breached the settlement agreement.

In the absence of a stipulated time for payment and without even a standard provision that "time is of the essence," the parties had an obligation to perform within a reasonable time. The defendants' offer to pay $17,500 at the time of signing the settlement agreement and to remit the balance of $10,000 within three weeks was reasonable under any recognizable standard of commercial dealing.

The payment schedule offered by the defendants cannot sensibly be characterized as a material departure from the settlement terms.  The use of $10,000 for twenty-one days had an arguable value between $7.77 and $18.95 at the time in question.[1]

---

[1] The United States Treasury Department set the Federal Reserve Prime Interest Rate at 3.25% throughout 2010.  See http://www.federalreserve.gov/releases/H15/data.htm [https://perma.cc/AZ7B-CHH3].  Application of this rate is generous to the plaintiffs, as many market rates, including

The offer to pay the second installment within three weeks thus, at most, can be claimed to have reduced the value of the $27,500 settlement by between .0003 and .0018 (.03% and .18%).

I am unpersuaded by the assertion that requiring the plaintiffs to execute a signed copy of the previously negotiated agreement including the defendants' proposed payment schedule was a repudiation of the settlement. For whatever reason, the intended execution of a signed copy of the agreement had been subject to delay.[2] The defendants' manifest desire was to confirm, not repudiate, the agreement. If the plaintiffs desired to quibble over the point they were required to counter the proposed payment schedule with a different, but also reasonable, proposal. While such an exchange might eventually have resulted in unraveling the agreement, the alacrity with which the plaintiffs demanded an additional $2,500 and then filed suit on the following day suggests strongly that the defendants' desire to secure the plaintiffs' signature on the existing agreement was based on a legitimate concern, accurately perceived.

---

regulated benchmarks (e.g., rates applied to unpaid taxes), reduce that rate by 200 basis points, in this case to 1.25%.

[2] The plaintiffs' counsel expressed concern during the period of delay that he did not "want to give the clients too much time to rethink this." Subsequent events have justified this remark.