NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-942                                         Appeals Court


RAQUEL RODRIGUEZ[1]  vs.  MASSACHUSETTS BAY TRANSPORTATION
                         AUTHORITY.


No. 16-P-942.

Suffolk.     April 7, 2017. - July 31, 2017.

Present:  Grainger, Sullivan, & Kinder, JJ.[2]


Massachusetts Bay Transportation Authority, Contract.  Railroad.
     Contract, What constitutes, Offer and acceptance.
     Practice, Civil, Motion to dismiss.



     Civil action commenced in the Superior Court Department on
November 10, 2015.

     A motion to dismiss was heard by Mitchell H. Kaplan, J.


     Thomas G. Shapiro (Robert Richardson & Edward C. Cumbo also
present) for the plaintiff.
     David S. Mackey (Christina S. Marshall also present) for
the defendant.


_____

     [1] On behalf of herself and all others similarly situated.

     [2] Justice Grainger participated in the deliberation on this
case prior to his retirement.

KINDER, J. In this case we address whether a public transportation authority breaches a contract with its commuter rail customers when extraordinary winter storms interrupt the service schedule. For the reasons that follow, we conclude that in the circumstances presented here, it does not. Accordingly we affirm the judgment of dismissal pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), for failure to state a breach of contract claim.

On April 22, 2015, the plaintiff, Raquel Rodriguez, brought this action against the Massachusetts Bay Transportation Authority (MBTA) and its commuter rail operator, Keolis Commuter Services, LLC (Keolis), on behalf of a putative class of purchasers of monthly rail passes in January, February, and March, 2015. The complaint alleged that the MBTA commuter rail service suffered severe delays and cancellations during the record-setting snowstorms of 2015. Rodriguez claimed that these service disruptions were in breach of the MBTA's implied contract "to provide timely, reliable commuter rail service . . . for January, February and March of 2015." In a comprehensive written decision, a Superior Court judge allowed the MBTA's motion to dismiss. Among other things, the judge concluded that even if the MBTA had some form of contractual obligation to its monthly pass holders, "the complaint fails to allege an essential element of a breach of contract claim: an

agreement between the parties on a material term of the contract at issue."  This appeal followed.[3]

Background.  We summarize the allegations in the operative complaint and the items appearing in the record of the case. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).  The MBTA is charged by statute with providing commuter rail and subway service in eastern Massachusetts.  G. L. c. 161A, §§ 1 and 2.  The MBTA provides service from 138 commuter rail stations situated along fourteen routes.  On an average weekday, the MBTA serves 131,161 passengers on the commuter rail, and monthly passes range from seventy-five dollars to $362.

Rodriguez and thousands of other commuters purchased monthly passes in January, February, and March of 2015. Rodriguez paid $182 for her so-called "Zone 1" monthly pass, which entitled her to unlimited travel within that zone.  The pass did not contain information regarding schedules and fares, but directed passengers to the MBTA's telephone number and Web site for that information.

---

[3] Rodriguez does not appeal the judgment of dismissal as to Keolis.  And as to her unjust enrichment claim against the MBTA, it is referenced in her notice of appeal, but she presents no related argument in her brief.  Accordingly, we do not address the claims related to Keolis or the claim that the MBTA was unjustly enriched.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

In the winter of 2015, the Boston area was beset by severe snowstorms. Four separate winter storms, occurring on January 27, February 2, February 7, and February 14, each registered snow accumulation of ten or more inches. It snowed an additional seven inches between February 15 and 28, and six inches in March. The complaint alleges that the intervals between storms left "more than enough time to clear the snow and return to a full commuter rail schedule."

Due to the snowstorms, the MBTA canceled all commuter rail, subway, and most bus service from 7:00 P.M. on Monday, February 9, through the end of the day on Tuesday, February 10. At some point in February, the MBTA announced a "winter recovery schedule," which provided "less than full commuter rail and [subway] service." Throughout March, the MBTA ran one or two morning weekday trains per line, and a total of only four to five trains per day. According to the complaint, commuters were "largely unable to use their monthly commuter rail passes for the second half of February and most of March [of] 2015, or if used at all with substantial uncertainty and delay." Rodriguez claims that the service fell "well short of what [she] and [other] purchasers of monthly commuter rail passes paid for."

When the MBTA announced the cancellation of service for February 9 and 10, Governor Charles D. Baker, Jr., expressed frustration and disappointment with the decision. Shortly

thereafter, the MBTA's chief executive officer and general manager, Beverly A. Scott, resigned. At the Governor's request, the MBTA board of directors also resigned. On March 11, 2015, the MBTA admitted that it had failed its customers and offered customers a fifteen percent discount on their monthly passes for May.

According to the complaint, the real reason for the MBTA's substandard service was not the weather, but "[y]ears of MBTA mismanagement and a culture of indifference."[4] Rodriguez claimed that the MBTA lacked the proper equipment to deal with winter storms, in part because in the previous five years, it had spent only $2.3 billion of the $4.5 billion it had planned to spend on capital construction. The complaint further alleged that the MBTA "knowingly" diverted funds intended for capital expenditures to pay inflated employee salaries.

Discussion. We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in Rodriguez's favor. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). To withstand a motion to dismiss, the "[f]actual allegations must

---

[4] In its April 8, 2015, report, a special panel convened by the Governor to review the MBTA found that "[t]he catastrophic winter breakdowns were symptomatic of structural problems that require fundamental change in virtually all aspects of the MBTA."

be enough to raise a right to relief above the speculative level."  Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While detailed allegations are not required, sufficient facts must be pleaded to plausibly suggest an entitlement to relief.  See ibid.

In relevant part, the complaint alleged that "[i]n exchange for monies paid, the MBTA contracted to provide timely, reliable commuter rail service to [Rodriguez] and the Class."  According to Rodriguez, the MBTA breached this contractual obligation in three ways:  (1) by failing to provide timely and reliable rail service; (2) by failing to provide reliable schedule updates, "rendering what limited service [the MBTA] did provide unusable"; and (3) by adopting the winter recovery schedule, which was so sparse that it extended the unreliable and untimely service through March of 2015.  In dismissing the contract claim, the judge concluded that "the MBTA had no express contractual obligation to provide 'normal' or 'regular' commuter rail service during and after the record-breaking snow storms in 2015, even though the plaintiff may have expected such rail service."

"It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present

intention to be bound by that agreement."  Lambert v. Fleet Natl. Bank, 449 Mass. 119, 123 (2007), quoting from Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). Put another way, "[a]n enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).  Whether contract terms are complete and definite is a question of law.  See Duff v. McKay, 89 Mass. App. Ct. 538, 544 (2016).

We agree with the judge that the complaint does not set forth the material terms of the claimed contract.  It is silent regarding the source of the contractual obligation, the scope of the MBTA's expected performance in these circumstances, and the rights of its customers in the event of a breach.  Moreover, the obligation to provide "timely and reliable service" is too indefinite to create an enforceable contract.  See Epstein v. Zwetchkenbaum, 356 Mass. 22, 24 (1969) (contract terms must be set forth with "certainty and precision"); Lambert, supra at 125 (vagueness of agreement indicated no intent to be bound).  Even if, as Rodriguez claims in her brief, the terms of the contract are the "normal" or "regular" MBTA published schedules, the complaint does not allege that the MBTA intended or agreed to be bound by the regular schedule, see McCarthy v. Tobin, 429 Mass.

84, 87 (1999), and we conclude it is not reasonable to draw that inference.

Rodriguez relies principally on Sears v. Eastern R.R. Co., 14 Allen 433 (1867), to support her claim that she entered into a contract with the MBTA when she purchased her monthly passes. In Sears, the Supreme Judicial Court concluded that an advertised train schedule constituted a general offer that became binding when accepted by the passenger, and that the implied terms of the contract included the published schedule. Id. at 436-437. The court held that the common carrier breached the contract by changing the departure time of a particular train without reasonable notice to the plaintiff. Id. at 438.

Even assuming that the principles of Sears still apply,[5] the case is distinguishable on its facts. In Sears, the court recognized that a railroad company has the right to make changes to a published train schedule, so long as reasonable notice is provided to ticket holders. Id. at 437. However, in Sears, the

---

[5] Commentators have suggested that common carriers no longer have contractual obligations to abide by their advertised timetables. See 1 Lord, Williston on Contracts § 4:15 (4th ed. 2007). See also 14 Am. Jur. 2d Carriers § 791 (2009) ("The publication of a timetable by a carrier does not amount to an absolute and unconditional agreement that its conveyances will arrive and depart at the precise moments indicated in the table. . . . [A] common carrier is not a guarantor of its schedules"); 13 C.J.S. Carriers § 503 (2005) (common carriers neither guarantee their schedules nor act as insurers of times at which passengers will reach their destinations).

train was intentionally delayed one hour and forty-five minutes to accommodate other passengers who wished to return to Boston at a later time, and the plaintiff did not receive reasonable notice of the change. Ibid. By contrast, here, the MBTA changed the train schedule because of severe winter storms and published a new schedule. Significantly, the changes were not made for the convenience of the MBTA or other passengers. Rather, they were made as the MBTA attempted to manage a weather emergency. In these circumstances, we agree with the judge's assessment that "Sears is sufficiently factually dissimilar to the instant case that it provides no support for [Rodriguez's] contention concerning the terms of the contract."[6]

Conclusion. The winter storms of 2015 wreaked havoc in and around Boston. To be sure, commuters were frustrated by the MBTA's inability to transport them to work and back home. Even the MBTA acknowledged the inconvenience caused by its failure. However, the purchase of a monthly pass on the MBTA is not a guarantee of performance according to its published schedule in these extraordinary circumstances. Because the complaint does not set forth the material terms of the claimed contract with

---

[6] Because we conclude that Rodriguez has not sufficiently pleaded an agreement between the parties on the material terms of the claimed contract, we need not reach the MBTA's other arguments that the claim is also barred by the filed rate doctrine, separation of powers principles, and principles of tort law.

sufficient precision, we discern no error in the dismissal of the breach of contract claim.

<u>Judgment affirmed</u>.