NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-654

DONALD PUOPOLO, JR.[1]

vs.

VINCENT DENIETOLIS, trustee.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Plaintiff Donald Puopolo, Jr., on behalf of his father Donald Puopolo, Sr. (Donald Sr.), trustee of the Donald Puopolo Revocable Trust (Puopolo trust), appeals from a judgment of dismissal entered after a Superior Court judge allowed a motion to enforce a settlement agreement. The plaintiff brought this action against his uncle, defendant Vincent Denietolis, trustee of the Vincent E. Denietolis Trust (Denietolis trust), concerning the management of rental properties that were jointly owned by the trusts. On the day of the defendant's scheduled deposition, the parties engaged in discussions culminating in a settlement to resolve the dispute, and they dictated agreed-on

_____

[1] On behalf of Donald Puopolo, Sr., trustee of the Donald Puopolo Revocable Trust. We use plaintiff throughout this opinion to refer to Donald Puopolo, Jr.

[2] Of the Vincent E. Denietolis Trust.

terms of the settlement, through counsel, on the record at the deposition.  The plaintiff later asserted that he was not bound by those terms, and the defendant moved to enforce the settlement agreement.  Following a nonevidentiary hearing, the judge allowed the motion and a judgment subsequently entered.

The plaintiff now argues that the dictated terms were not sufficiently clear and complete to constitute a binding agreement, the parties never reached a meeting of the minds on all material terms of the agreement, and the judge erred in failing to hold an evidentiary hearing to resolve factual disputes surrounding the parties' intent.  We affirm.

Background.  The following facts drawn from the record and the parties' briefs are undisputed.  See Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 30 (2008).

Donald Sr. and defendant Denietolis, who are brothers-in-law, jointly owned three rental properties in Revere, each consisting of two units, since the early 1970s.  In 2012, they transferred their interest in the properties to their respective trusts such that the Puopolo trust and Denietolis trust each own a one-half interest in the properties as tenants in common.

At the outset of their business relationship, Donald Sr. and the defendant equally shared in the management and operation of the properties, and the related profits and expenses generated by the properties.  After Donald Sr.'s health

2

declined, the defendant assumed sole management of the properties, and the plaintiff began managing his father's financial affairs under power of attorney and as cotrustee of the Puopolo trust.

In February 2020, the plaintiff initiated this action, alleging that his uncle failed to equally share the revenues and profits generated from the properties, took fees exclusively for his own benefit, and withheld financial information from the plaintiff.  The defendant counterclaimed, alleging that Donald Sr. ceased to equally share in the management and operation of the properties around 1996 and charged below-market rent or no rent whatsoever to two family members living on the properties. The defendant also alleged that the plaintiff demanded a free apartment or the cash equivalent and sought to take out a mortgage on the properties for his personal benefit.

The plaintiff served a notice of deposition on the defendant for July 15, 2021.  Counsel and the parties appeared in person with the plaintiff traveling from his home in Florida to attend.  At the suggestion of plaintiff's counsel, the parties arrived early to discuss property management issues and potential settlement.  After a thirty to forty-minute discussion, they went on the record with the court reporter.  In lieu of the proceeding with the deposition, plaintiff's counsel stated:

"Going on the record to report a settlement in Suffolk Superior Court civil action number 20-0547. The parties had a settlement discussion and have come to the following terms, which we'll go through on the record, and I can be corrected by the end of that by counsel.

"It will be agreed as follows: The defendant in this action will receive the sum of $600,000 in return for his conveyance of all rights, title, and interest in [the three rental properties, described by address].

"The $600,000 payment will be made as follows: $100,000 shall be remitted on or within 30 days as a cash down payment. The $500,000 remaining balance will be evidenced by a promissory note for a 25-year amortization, seven-year term, five per annum interest. That note will be secured by a first mortgage and assignment of leases and rents. There will be deeds transferring all rights, title, and interest into an LLC to be formed by the plaintiff, and we will so designate in the transfer of documents. That LLC will become the maker of the note."

Plaintiff's counsel then discussed the parties' agreed-on disposition of this action as well as two other pending actions as follows. The parties agreed to stipulate to the dismissal with prejudice of a pending Land Court case "upon completion of this settlement agreement," and that "the parties will sign mutual releases of each other with an exclusion of [matters to be] performed pursuant to this settlement agreement that we are dictating." The parties also agreed that a separate action pending between the parties in the Superior Court would survive the mutual releases, and that a stipulation of dismissal with prejudice would be filed in this action.

Finally, plaintiff's counsel discussed certain "practical matters," including payments to be made by the defendant to the

4

plaintiff on or within seven days, the division of the remaining funds in the management and operating accounts, and the collection of rents due on August 1st. Plaintiff's counsel also stated his understanding that the current tenants had not paid security deposits and discussed the return of the last month's rent that was collected from some of the tenants. Plaintiff's counsel explained that those rents would be returned at the time of conveyance of the properties, "which is expected to be on or within [thirty] days."

Plaintiff's counsel then inquired if he had missed anything, and the following exchange occurred:

> DEFENDANT'S COUNSEL: "No. Just two observations. One is on the [other Superior Court case] we talked about. Plaintiff in that case, who's the defendant in our current case, reserves the right to bring the case in Florida as well, if he so elects. With respect to the closing, each party will pay the usual and customary fees associated with the transfer. For example, the seller pays the stamp, the deed excise tax in the Commonwealth. The buyer will pay whichever LLC fees he needs to pay."

> PLAINTIFF'S COUNSEL: "Each party will bear its [own] costs, fees, and expenses."

> DEFENDANT'S COUNSEL: "And attorneys' fees."

> PLAINTIFF'S COUNSEL: "Including attorneys' fees. And each party will agree in the stipulation filed with the Court to waive any and all rights of appeal. Counsel, anything else?"

> DEFENDANT'S COUNSEL: "No. I think that's it. We said full releases, except as to the existing issues in the other case."

> PLAINTIFF'S COUNSEL: "That's correct. Thank you."

5

That same day, after the court reporter left, the parties continued to discuss permitting and zoning issues, and the need for maintenance and repairs on the properties.

Between August 11 and 31, 2021, defendant's counsel sent four e-mail messages (one with a letter attached), and left two voicemail messages for plaintiff's counsel, inquiring about the status of the proposed settlement documents that plaintiff's counsel was to draft.[3]  On August 31, 2021, plaintiff's counsel responded by letter, sent via e-mail message, advising of the plaintiff's position that the dictated terms did not constitute a full and final settlement.  Plaintiff's counsel noted that no formal written settlement agreement was drafted, the settlement was not reported to the court, and no judgment of dismissal entered.  Plaintiff's counsel further stated:

> "[T]he transcript does not address several of the issues that go to the very essence of the case such as the ability to make repairs and obtain permits for doing such repairs or for operating the properties as two-family units.  The transcript is silent as to building code violations, permitting, the illegal 'shared' utility service with a neighboring property and other fundamental property matters."

On October 25, 2021, the defendant filed a motion to enforce settlement agreement based on the terms dictated at the

---

[3] The first e-mail message also stated that defendant's counsel was scheduled to leave for vacation the following day and noted that "[t]he 30 days is fast approaching."

6

deposition.  In support thereof, the defendant attached an affidavit from his counsel, a copy of the deposition transcript, and the July and August 2021 written communications between counsel.  The plaintiff opposed the motion and provided his own affidavit in response.  The judge held a nonevidentiary hearing on the motion.  Both parties filed supplemental briefing after the hearing as authorized by the judge.  The defendant also produced additional affidavits from his counsel and provided e-mail messages exchanged with plaintiff's counsel and predecessor counsel, pertaining to the occupancy permits to operate the properties as two-family homes as well as the plaintiff's inspection of the properties.  In a written memorandum and order, the judge allowed the defendant's motion, concluding that the parties reached an agreement on all material terms and expressed a present intent to be bound by the agreement.  A judgment dismissing the plaintiff's complaint and the defendant's counterclaims with prejudice subsequently entered. This appeal followed.

Discussion.  Where, as here, the judge enforced a settlement agreement without an evidentiary hearing, we treat the defendant's motion as akin to one for summary judgment.  See Duff v. McKay, 89 Mass. App. Ct. 538, 542 (2016).  Thus, we conduct a de novo review to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all

7

material facts have been established and the moving party is entitled to a judgment as a matter of law."  Id. at 542-543, quoting Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011).

"A settlement agreement is a contract and its enforceability is determined by applying general contract law." Sparrow v. Demonico, 461 Mass. 322, 327 (2012).  "An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Duff, 89 Mass. App. Ct. at 543, quoting Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).

1.  Settlement terms.  The plaintiff argues that the terms of the agreement were not sufficiently complete because the parties failed to agree on or memorialize certain material terms that were discussed immediately after they went off the record with the court reporter.  Specifically, the plaintiff asserts that terms were missing on the issues of zoning and legal permitting related to the properties' continued use as two-family residences, the condition of and repairs required for the properties, and the consequences if the plaintiff could not obtain the $100,000 cash down payment.

"It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract."  Situation Mgt. Sys., Inc. v. Malouf,

8

Inc., 430 Mass. 875, 878 (2000).  The question before us is whether the absence of terms addressing the issues specified by the plaintiff "meant that significant, material terms were still to be negotiated" (quotation and citation omitted).  Duff, 89 Mass. App. Ct. at 543.  If the issues identified concern "'subsidiary matter[s]' that did not alter the essential nature of the bargain, then there was a contract that could be enforced."  Id. at 544, quoting McCarthy v. Tobin, 429 Mass. 84, 86 (1999).

Here, the parties described the properties to be transferred and agreed on the price, the manner of payment, the execution of mutual releases, the effect of settlement on this and two other pending matters, the division of the balances in the remaining business accounts, the disposition of certain payments previously collected from the tenants, and the parties' obligations related to closing costs and attorney's fees.  The terms also required each party promptly to act -- the defendant agreed to make certain payments on or within seven days (which the defendant did make),[4] and the plaintiff agreed to provide the down payment within thirty days.  The parties accounted for collection of the August rents and noted that they expected the properties to be conveyed within thirty days.  These dictated

---

[4] The plaintiff asserts that he never cashed the defendant's checks.

9

terms between the parties were sufficiently complete and definite as a matter of law.  See McCarthy, 429 Mass. at 86-87 (offer to purchase binding where it adequately described property to be sold, deposit requirements, and price to be paid).

The outstanding issues identified by the plaintiff -- the status of zoning and permitting as well as the condition of and necessary repairs to the properties -- are subsidiary matters that were raised to or by the plaintiff prior to the time that the parties signaled that an agreement had been reached.  See Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 141 (1987) (where all significant economic matters resolved, subsidiary matters included "state of the title, conformance with local law, condition of the premises, extension provision to allow seller time to remove title defects, buyer's right of election to accept a deficient title").  See also Duff, 89 Mass. App. Ct. at 544 (court may consider "status of things at the time the parties signaled that an agreement had been reached").  The plaintiff was notified that the building commissioner was concerned that use of the properties as multifamily homes was illegal as early as November 2019 and that the issue persisted in January 2020.  The plaintiff also was aware that the two-family occupancy permits had not been issued as of November 2020, and that they could not be obtained without installing

10

hardwired smoke and carbon monoxide detectors.  With respect to the condition of the properties, the plaintiff personally inspected the properties with a property manager in November 2020.  As a result of that inspection, the plaintiff relayed his view to defendant's counsel that "[t]here has been total neglected repairs and maintenance."  Despite the plaintiff's awareness of these matters, the terms dictated by his own counsel made no reference to them and no reference to unresolved or outstanding issues.[5]  See Targus Group Int'l, Inc., 76 Mass. App. Ct. at 430 (sufficiently complete agreement where document made no reference to unresolved issues or unfinished business).  Therefore, we conclude, the terms and conditions as set forth in the agreement were sufficiently complete and definite to form an enforceable contract.

2.  Intent to be bound.  The plaintiff argues that the parties did not have a present intent to be bound at the time the terms were dictated because the parties used the future tense in some instances, never exchanged drafts of a written

---

[5] We are unpersuaded by the plaintiff's argument that the agreement was incomplete in the absence of a term concerning the consequences if the plaintiff defaulted on his obligations, including if he was unable to obtain the $100,000 down payment. As the motion judge properly noted, the remedy is clear and, thus, the term is not material to the agreement.  The defendant would be free to file suit against the plaintiff for breach of contract.

agreement, and did not report the settlement to the court.  We
disagree.

    a.  <u>Words used and surrounding circumstances</u>.  "To create
an enforceable contract, the parties must have had the intention
to be bound by their agreement at the moment of its formation."
<u>Basis Tech. Corp</u>., 71 Mass. App. Ct. at 39.  "To ascertain
intent, a court considers the words used by the parties, the
agreement taken as a whole, and surrounding facts and
circumstances."[6]  <u>Id</u>. at 41, quoting <u>Massachusetts Mun. Wholesale
Elec. Co</u>. v. <u>Danvers</u>, 411 Mass. 39, 45-46 (1991).

    The transcribed terms here demonstrate that the parties had
the requisite intent to be bound.  At the outset, plaintiff's
counsel prefaced his entire recitation of the terms with the
unequivocal and unqualified statement that the parties were
"[g]oing on the record to report a settlement in Suffolk
Superior Court civil action number 20-0547."  Thereafter,
plaintiff's counsel did use the future tense in several
instances, including by stating "[i]t will be agreed as follows"
before describing the terms; however, he used "have agreed"

_____

[6] The plaintiff asserts that the judge's factual finding on the
issue of contemporaneous intent is reviewed for clear error.
See <u>Fecteau Benefits Group, Inc</u>. v. <u>Knox</u>, 72 Mass. App. Ct. 204,
212 (2008); <u>Basis Tech. Corp</u>., 71 Mass. App. Ct. at 36.  Whether
we review the issue of intent for clear error or de novo based
on the same record as the motion judge, we would reach the same
result.

12

elsewhere and, notably, also referenced "this settlement agreement that we are dictating."  At the end of the discussion, both counsel expressed satisfaction that the recitation of the agreed-on terms was complete, without any qualification.  See Basis Tech. Corp., 71 Mass. App. Ct. at 40 (unqualified acceptance of terms supports intent to be bound).  As the plaintiff notes, the use of the future tense in some instances may signal that the parties were describing preliminary terms of a future agreement, see Targus Group Int'l, Inc., 76 Mass. App. Ct. at 433, but reading the terms as a whole, it is clear that the use of the future tense here was made in reference to actions that the parties were required to take under the terms of the fully-formed settlement agreement.

The circumstances surrounding the dictation of the terms further evidences the parties' intent to be bound.  The parties are familiar with each other and the properties that are the subject of this litigation.  They were engaged in three separate lawsuits at the time, two of which pertained to the properties, and they arrived early (at plaintiff's counsel suggestion) to discuss settlement.[7]  Even then, they only reached agreed-on

_____

[7] The pending Land Court case concerned a petition for partition of the properties at issue that was filed by the defendant in this case.  Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011) (court may take judicial notice of docket entries and papers filed in separate cases).

13

settlement terms resolving two of those lawsuits after discussion and in the presence of experienced counsel.  The parties chose to formalize the agreed-on terms by "[g]oing on the record to report a settlement," in order to ensure that they accurately were transcribed.  The result was that the defendant's deposition, an event that the plaintiff had traveled from out of State to attend, was never held.  These deliberate and informed actions support the judge's conclusion that the parties demonstrated a present intent to be bound.  See Targus Group Int'l, Inc., 76 Mass. App. Ct. at 433 (sophistication of principals and counsel, and absence of references to unfinished terms or future mediation sessions, supported intent to be bound).

b.  Further writings.  The parties' understanding that the settlement agreement ultimately would be reduced to writing is not dispositive on the issue of intent.  See Duff, 89 Mass. App. Ct. at 546 (settlement agreement memorialized in e-mail messages enforceable where formal documents never executed); Basis Tech. Corp., 71 Mass. App. Ct. at 39-40 (same).  The parties agreed to all material terms and did not include an invalidating clause or any language reserving agreement until execution of written documents.  See McCarthy, 429 Mass. at 88 n.3 ("If parties do not intend to be bound by a preliminary agreement until the execution of a more formal document, they should employ language

14

such as that suggested by [this court in earlier decisions]");
Targus Group Int'l, Inc., 76 Mass. App. Ct. at 433 (parties unprepared for firm commitment may include "'invalidating clause' or reservation of agreement until execution of later final documents of implementation").  As such, "it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract" (citation omitted).  McCarthy, supra at 87.  See Goren, 25 Mass. App. Ct. at 141-142.  Contrast Rosenfield v. United States Trust Co., 290 Mass. 210, 218 (1935) (no intent to be bound where party refused to enter into short form agreement and insisted on having lease drawn).

c.  Failure to report settlement to court.  The plaintiff makes much of the fact that the parties did not report the settlement to the court between the July 15, 2021 deposition and the August 31, 2021 communication from plaintiff's counsel contesting the existence of an agreement.  A report of settlement to the court is strong circumstantial evidence of the parties' intent to be bound, see, e.g., Basis Tech. Corp., 71 Mass. App. Ct. at 44, but is not a prerequisite to creating an enforceable settlement agreement.  See Targus Group Int'l, Inc., 76 Mass. App. Ct. 433 (settlement reached during prelitigation mediation); Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App.

15

Ct. 204, 213 (2008) (settlement memorialized in e-mail messages between counsel).

As a practical matter, defendant's counsel followed up several times throughout August based on his understanding that plaintiff's counsel would provide a draft of the written agreement, and the defendant made the required payments under the terms of the agreement.  Within one month of receiving notice that the plaintiff disputed the existence of an agreement, the defendant served the plaintiff with a motion to enforce the settlement agreement.  While this course did not have the effect of terminating a trial, it did have some effect on litigation -- namely, it stalled discovery -- and the defendant acted promptly to resolve the issue.  Therefore, the failure to report the settlement to the court between mid-July and late August 2021 did not undercut the conclusion that the parties had a present intent to be bound.

d.  Request for evidentiary hearing.  Finally, the plaintiff argues that his affidavit raised genuine issues of material fact surrounding the parties' intent such that an evidentiary hearing was required.  We disagree.

At most, the plaintiff's affidavit demonstrated that he had an unexpressed, subjective intent not to be bound at the time the terms were dictated and that the parties engaged in discussions about the properties, including their future use as

16

two-family homes, after the court reporter left.  Indeed, in his affidavit, the plaintiff seemingly indicated he only communicated his view that the agreement was not binding after he left the deposition, further inspected the properties, and spoke with the management company.[8]

The plaintiff's evidence of his own subjective intent was irrelevant; the pertinent issue was whether the parties manifested the objective intent to be bound at the time of contract formation, notwithstanding either party's subjective intent.  See Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 596 n.35 (2007).

The parties' further discussions after the court reporter left were irrelevant, as the parties' intent is assessed at the moment of formation of the contested agreement (i.e., when the terms were dictated to the court reporter).  See Targus Group Int'l, Inc., 76 Mass. App. Ct. at 432.  The plaintiff, of course, was free to "angl[e] and prob[e] for incremental benefits or favors" beyond those agreed to by the parties at the deposition, but the plaintiff did not condition his commitment on the defendant's acceptance of any later proposals.  Id. at

---

[8] In relevant part, the plaintiff stated, "After trying to get a complete picture of what was needed for these properties to be operated properly, I informed my uncle and his attorney that the alleged settlement was not complete because of these issues and that there was a further need to address these points."

17

434.  Therefore, his requests for further settlement discussions in August 2021 "operated independently of the core agreement and left it intact."[9]  Id.

Because the material facts were undisputed and the question of intent turned on the language used by the parties in dictating terms to the court reporter, the motion judge was not required to hold an evidentiary hearing.  See Community Bldrs., Inc. v. Indian Motocycle Assocs., 44 Mass. App. Ct. 537, 548 (1998).

Conclusion.  The judge correctly concluded that the settlement terms set forth on the record during the defendant's deposition were sufficiently complete and definite, and that both parties manifested an objective intent to be bound by those terms.  Accordingly, we affirm the judgment enforcing the

---

[9] The plaintiff proposed new settlement terms, including on price, in his August 31, 2021 letter.

settlement agreement and dismissing the complaint and counterclaims.[10]

Judgment affirmed.

By the Court (Neyman,
 Desmond & Smyth, JJ.[11]),

*Joseph F. Stanton*

Clerk

Entered:  August 24, 2023.

---

[10] The defendant's request for appellate attorney's fees and costs is denied.
[11] The panelists are listed in order of seniority.