NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-2

SUSAN BACH, trustee,[1]

vs.

RICHARD M. SHEA[2] & another;[3] SUSAN BACH, individually, third-party defendant.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a judgment of dismissal following a Superior Court judge's allowance of a motion to enforce settlement agreement.  On appeal, she contends that the judge erred in determining that the parties had come to such an agreement.  As the judge's findings are insufficient to allow

---

[1] Of the Frances S. Adams Trust.

[2] In an April 2022 pretrial order, a Superior Court judge acknowledged that Richard M. Shea had died.  The docket does not reflect any substitution of parties thereafter.  We refer to the remaining defendant, Joan M. Shea, as "the defendant" throughout.

[3] Joan M. Shea.

proper review, we vacate the judgment and remand for further proceedings.

Background.  This case originated as a dispute over a family trust.  The plaintiff is the trustee of the Frances S. Adams Trust.  Frances S. Adams, who passed away in 2016, was the plaintiff's mother's sister.  In 2017, the plaintiff brought this action against her mother's brother, Richard M. Shea, and his wife (the defendant), alleging improprieties with respect to trust assets, among other things.  Richard Shea and the defendant counterclaimed against the plaintiff, and filed a third party complaint against the plaintiff in her individual capacity, alleging similar improprieties.  During the protracted litigation, the plaintiff's mother and Richard Shea passed away. As the case progressed to trial in 2024, the plaintiff and the defendant began talking of settlement.

On June 7, 2024, the defendant's counsel told the plaintiff's counsel that "family photos" could be provided to the plaintiff as part of a settlement of the case.  He went on to say that the defendant would be willing to contribute $10,000, in the name of Adams, to a charity in order to resolve the litigation.  On June 10, 2024, the plaintiff's counsel responded, "Conceptually, and subject to getting to a formal agreement, I think we have the framework for a deal."  He requested that the defendant's counsel draw up a settlement

agreement including certain provisions, specifically one which required the defendant to turn over to the plaintiff "family papers, photographs" and added, "I[t] would be helpful to know what exactly [the defendant] still has in terms of papers, files, photos so I can let [the plaintiff] know." The following day, the defendant's counsel provided a draft settlement agreement.

On June 20, 2024, the plaintiff had an opportunity to view the photographs and documents proposed to be delivered. She was not satisfied with the production and thereafter specified what she expected to receive as family photographs and documents. After further discussion failed to resolve the issue, the plaintiff stated to the defendant's counsel on June 26, 2024, "I don't know what you are going to do about this but I think you might want to talk about this with your client. This is a very important aspect of the settlement and the current production is not sufficient. This changes things."

Subsequently, defense counsel made further attempts to satisfy the plaintiff with respect to the production of photographs, to no avail. On July 1, 2024, the plaintiff expressed her frustration and disappointment, and said that she still expected photographs to be provided to her irrespective of any settlement and that if the defendant wanted to settle, it was incumbent on her "to make an offer she can and will

3

perform."  More discussion regarding photograph production ensued.  On August 2, 2024, the defendant's counsel sent the plaintiff an e-mail message, attaching a draft settlement agreement, asserting that it reflected an agreement reached by the parties.  With respect to the family photographs, this draft settlement agreement provided that the defendant was to deliver to the plaintiff

> "approximately 300 original family photographs depicting members of the Shea and/or Adams families, which [the plaintiff] is entitled to keep; . . . [and] digital copies (prepared by a professional digitizing company, at [the defendant's] sole cost) of certain photographs which [the plaintiff] separated and/or flagged on August 1, 2024."

Defense counsel requested that the plaintiff sign the agreement or at least authorize her attorney to report the matter settled; otherwise, he would move to enforce the settlement agreement.

The plaintiff did not sign the agreement, and the matter was not reported settled.  On August 13, 2024, the defendant filed an emergency motion to enforce settlement agreement, supported by an affidavit of the defendant.  The plaintiff filed an opposition supported by her own affidavit.  On August 22, 2024, the parties appeared in court for the final pretrial conference for the trial scheduled for August 26, 2024.  At that time, the judge heard counsel on the motion to enforce settlement agreement.  The following day, the judge allowed the motion and issued a dismissal nisi order, requiring the parties

4

to submit an agreement for judgment or stipulation of dismissal within a month.  When the parties failed to do so, the judge dismissed the case.

Discussion.  "A settlement agreement is a contract and its enforceability is determined by applying general contract law." Duff v. McKay, 89 Mass. App. Ct. 538, 541 (2016), quoting Sparrow v. Demonico, 461 Mass. 322, 327 (2012).  To be considered enforceable, an "agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Targu Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).  We review de novo the judge's legal determinations, such as whether a contract exists or whether an ambiguity exists within it.  See Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008).  We review the factual finding of the parties' contemporaneous intent to be bound under the "clearly erroneous" standard of Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).  Basis Tech. Corp., supra.

Here, the judge made no findings concerning the terms of the agreement or the parties' intent, having concluded that the parties did not dispute the existence of a settlement agreement. Although the plaintiff agreed that the parties had reached an agreement in principle, the record is unclear whether, and if

5

so, when and on what terms, the parties agreed to be bound. The defendant contends that an enforceable agreement was reached on June 10, 2024, when the plaintiff's counsel said that they had "the framework of a deal," essentially consisting of a $10,000 payment and the delivery of family photographs and papers. At that point, however, the parties had not confirmed, or even discussed, what constituted family photographs and papers. Indeed, in the very same message, the plaintiff's counsel inquired as to the extent of the photographs and papers in the defendant's possession.[4]

The plaintiff stated, through counsel, that she would need to take a look at the production before signing an agreement. Soon thereafter, the plaintiff had an opportunity to view the photographs and documents and determined that they did not comport with her expectation of what she would receive in exchange for dismissal of the suit. Within two weeks of the "framework of a deal" being struck, the plaintiff communicated her intention not to settle on the terms initially discussed. Nevertheless, almost two months later, the defendant sought to enforce a written settlement agreement to which no assent appears in the record.

---

[4] The defendant initially represented that she had a "shoebox" full of photographs and no other family documents. Over time, additional photographs and family documents were disclosed.

6

Although the plaintiff's counsel characterized the situation as one of "mutual mistake" or "failure of consideration," his argument could reasonably be construed to be that there was no meeting of the minds with respect to the family photographs and documents.  The judge determined that "any mistake was unilateral and based on [the plaintiff's] unconfirmed assumptions about what family photos [the defendant] had" and that "a unilateral mistake does not void the settlement agreement."  Whether the judge was correct as a matter of law depends on the factual questions of whether, at what point, and on what terms the parties intended to be bound.  We therefore vacate the judgment of dismissal and remand this matter to the trial court for further proceedings, which may include the taking of additional evidence on the defendant's motion to enforce settlement agreement, should the defendant choose to pursue the motion.[5]

So ordered.

By the Court (Rubin, Shin & Singh, JJ.[6]),

Clerk

Entered: April 21, 2026.

---

[5] The defendant's request for attorney's fees is denied.

[6] The panelists are listed in order of seniority.

7