## Lisa Coviello vs. Patricia K. Richardson.

No. 09-P-568.

Suffolk. January 15, 2010. - April 15, 2010.

Present: Lenk, Kantrowitz, & Vuono, JJ.

*Practice, Civil,* Summary judgment. *Contract,* Sale of real estate, Offer and acceptance, Performance and breach, Specific performance. *Real Property,* Sale, Purchase and sale agreement, Specific performance.

In a Land Court action involving a breach of contract claim stemming from a written offer to purchase real estate that required the parties to execute a purchase and sale agreement by a certain date, the judge erred in granting summary judgment in favor of the plaintiff buyer, where a genuine issue of material fact remained with regard to whether the defendant seller had repudiated the offer to purchase. [608-611]

Civil action commenced in the Land Court Department on March 28, 2008.

The case was heard by *Charles W. Trombly,* J., on motions for summary judgment.

*Jonathon D. Friedmann (Robert E. Curtis, Jr.,* with him) for the defendant.

*Barry L. Finkel* for the plaintiff.

Kantrowitz, J. On November 12, 2008, a Land Court judge granted summary judgment to buyer Lisa Coviello on her breach of contract claim against seller Patricia Richardson stemming from a written offer to purchase real estate (OTP) and a related purchase and sale agreement (P&S).

On appeal, Richardson argues that there are genuine issues of material fact with regard to (1) whether she refused to sign the P&S on its original terms, and (2) whether Coviello was ready, willing, and able to perform her obligations under the original P&S at the time of the purported breach. Given that a genuine issue of material fact exists, we reverse.

*Facts.* "On an appeal from a summary judgment, we recount

the facts in the summary judgment materials in the light most favorable to the nonmovant, drawing all permissible inferences and resolving any disputes or conflicts in [her] favor." *DiPietro* v. *Sipex Corp.*, 69 Mass. App. Ct. 29, 30 (2007).

On February 12, 2008, Richardson signed the OTP submitted by Coviello for Richardson's condominium unit. The OTP required the parties to execute a standard form P&S by 5:00 P.M. on February 26, 2008. The OTP contained several contingency clauses, including a "time is of the essence" clause and a mortgage contingency clause, which established February 13, 2008, as the deadline for the mortgage application submission, and February 29, 2008, as the deadline for the mortgage commitment. The OTP also required payment of a $12,500 deposit due upon execution of the P&S on February 26, 2008.

On or about February 19, 2008, Coviello's representatives began discussing concerns about securing financing to meet the February 29, 2008, mortgage commitment date in the OTP, and Coviello's broker, Jennifer Johnson, asked Coviello's attorney, Scott Kriss, to change the mortgage commitment date from February 29, 2008, to March 7, 2008. This request was not immediately conveyed to Richardson.

On February 21, 2008, Richardson submitted a draft P&S to Coviello reflecting the dates specified in the OTP, including the February 26, 2008, signing deadline and the February 29, 2008, mortgage commitment date. At 3:03 P.M. on February 25, 2008, Kriss contacted Richardson's attorney by electronic mail (e-mail) with the proposed change to the mortgage commitment date, from February 29 to March 7.

In response to the e-mail, Richardson's attorney, Alan Sharaf, telephoned Kriss to inform him that Richardson was neither willing nor obligated to agree to a revised date. Beyond his rejection of the change to the mortgage commitment date, it is unclear in the record exactly what Sharaf told Kriss during the telephone call. Sharaf's affidavit states that he "informed [Kriss] that Richardson rejected Coviello's request to change the mortgage commitment date in the OTP and that Richardson would not be executing a [P&S] regarding the Property *with the new proposed mortgage commitment deadline*" (emphasis added). Sharaf further stated he "explained to Kriss that my client

considered the requested change a new offer or a counter offer thus voiding the OTP and that my client was not obligated to accept a material change to a term in the OTP."

Sharaf also stated that, during the telephone call, he told Kriss that "Richardson was *unwilling to re-negotiate* the OTP" (emphasis added), because she "was pregnant and required a stress free transaction with certainty so she could find a new place to live within a definite, firm and known time frame." Sharaf further stated that Kriss never informed him "that Coviello would sign a [P&S] with a February 29, 2008, mortgage commit[ment] date," and that "Kriss acknowledged that the OTP was due to expire after 5:00 [P.M.] on February 26, 2008."

Coviello's depiction of what transpired during the call paints a different picture. In her answers to Richardson's interrogatories, Coviello stated that Sharaf told Kriss that Richardson "was backing out of the agreement due to a concern about finding new housing coupled with her being pregnant." At his deposition, when questioned about his conversation with Coviello regarding the ramifications of what had happened, Kriss testified that "I think it was made very clear to us that the seller didn't wish to proceed," and "in my practice . . . when the seller tells us that it is not proceeding, we talk about the options with the buyer and take it from there." He also gave the following characterization of the deal: "It was common knowledge between . . . us that [the OTP] had expired at that point or was about to expire whenever these conversations took place or had expired the day before."

Richardson's answers to Coviello's interrogatories further muddy the waters. Richardson responded to an interrogatory asking why she "did not actively seek to sell the condo unit. . . after February 25, 2008," by stating: "Due to the pending birth of Richardson's first child (which was diagnosed as a 'high risk pregnancy' requiring bed rest) Richardson decided to reside in the condominium unit and forgo selling the condominium unit for the foreseeable future." Richardson also acknowledged that her pregnancy was first diagnosed as "high risk" on or about February 19. She further responded to the question of when she first decided "to reside in the condominium unit and forgo the selling of the condominium unit for the foreseeable future," by

stating that "sometime *after 3:03*[1] *P.M. on February 25, 2008*, Richardson no longer believed she was bound by the OTP and decided to reside in the condominium unit and forgo selling the condominium unit to the Plaintiff or any other third party for the foreseeable future" (emphasis added). She also responded that she first determined that she was "no longer bound" by the terms of the OTP "[s]ometime after 3:03 [P.M.] on February 25, 2008."

Richardson's answer and her responses to Coviello's requests for admissions and interrogatories generally highlight her belief that Coviello's request to change the mortgage contingency date was a new offer or counter offer, with which she was not required to agree. Nonetheless, these assertions were repeatedly paired with her alternate theory that the OTP terminated by its own terms, suggesting the possibility that she would have accepted a signed version of the original P&S tendered prior to the expiration of the OTP.[2] As of 5:00 P.M. on February 26, neither party had signed the P&S, as was required by the OTP.

Approximately one month later, on March 28, Coviello filed suit in the Land Court. Ultimately, both parties moved for summary judgment,[3] with Coviello asserting that Richardson breached

---

[1]The time stamp on the e-mail, sent by Kriss requesting the mortgage date change, was 3:03 P.M.

[2]At oral argument, counsel for Coviello pointed to Richardson's answer to interrogatory number 22 as definitive evidence that she voided the contract on February 25, 2008. However, read in its entirety, the answer repeats the same pattern:

"INTERROGATORY NUMBER 22.

"Please state all facts relating to your denial of the allegations contained in Paragraph No. 17 of the Complaint.

"*RESPONSE*

"The OTP was only a valid and binding contract until approximately 3:03 [P.M.] on February 25, 2008 when the Plaintiff through her attorney made a new/second offer to purchase the Property and voided the OTP. *In the alternative*, the obligations of the parties expired on February 26, 2008 at 5:01 [P.M.] when the parties failed to enter into a purchase and sale agreement" (emphasis added).

[3]Although Richardson then asserted that there were no genuine issues of material facts and now, before us, is arguing the opposite, she is not foreclosed from so doing. See *Basch & Sons* v. *Travelers Indem. Co.*, 392 Mass. 1002, 1003 (1984) ("The fact that both parties moved for summary judgment does not mean that no material factual issue remained").

the contract by refusing to sign the P&S, and Richardson asserting that Coviello's request to change the mortgage commitment date was a new offer or a withdrawal of the original OTP and that, regardless, the OTP expired by its terms when both parties failed to enter into a P&S on or before the February 26, 2008, deadline.

On November 12, 2008, the Land Court judge granted Coviello's motion for summary judgment and denied Richardson's motion, awarding Coviello specific performance under the terms of the OTP based on Richardson's breach. In doing so, the judge concluded that Coviello's request to change the mortgage commitment date did not "constitute a breach and a new offer." He further concluded that the expiration of the deadline at 5:01 P.M. on February 26, 2008, did not void the agreement because "[o]nce [Richardson] told [Coviello] that she had no intention of signing the P&S due to her opinion that [Coviello] was in breach, [Coviello] was relieved of any duty to sign the document."

In reaching this conclusion, the judge characterized the telephone call between Sharaf and Kriss as follows: "Sharaf informed Kriss that [Richardson] had rejected [Coviello's] request to change the mortgage commitment date in the OTP and further stated that [Richardson] would not execute the P&S for the property because she viewed the request as a counteroffer, which voided the original OTP." The judge also specified that Richardson breached "when she made the poorly informed decision that [Coviello] had breached and refused to move forward with the signing," and that Richardson "chose not to go forward, as required by the valid and binding OTP."

*Standard of review.* "[T]he standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Siebe, Inc.* v. *Louis M. Gerson Co.*, 74 Mass. App. Ct. 544, 548 (2009), quoting from *Nelson* v. *Salem State College*, 446 Mass. 525, 530 (2006). "Our review is de novo." *Id.* at 549.

"In deciding a motion for summary judgment, a court does not resolve issues of material fact, assess credibility, or weigh evidence." *LaBrecque* v. *Parsons*, 74 Mass. App. Ct. 766, 768 (2009), quoting from *J.F.* v. *J.F.*, 72 Mass. App. Ct. 782, 790

(2008). "Rule 56(c) provides that summary judgment shall be granted if the 'pleadings, depositions, answers to interrogatories, and responses to requests for admission under [Mass.R.Civ.P. 36, 365 Mass. 795 (1974)], together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Bardige* v. *Performance Specialists, Inc.*, 74 Mass. App. Ct. 99, 102 (2009).

*Discussion.* The judge below summarized the case as follows: "Since the OTP was undisputedly a contract binding both parties to sign the P&S, and since a P&S was never signed, it is clear that there was a breach of that OTP. The issue then becomes: When did that breach occur, and by whom was it committed?"

We agree that the OTP was an unambiguous, binding contract requiring the parties to execute a P&S by February 26, 2008. See *McCarthy* v. *Tobin*, 429 Mass. 84, 86-88 (1999). We further agree that while Coviello could not unilaterally change the mortgage commitment date, see *Bossi* v. *Whalen*, 19 Mass. App. Ct. 966, 967 (1985), her request to modify the date did not constitute a breach and a new offer. See *Tremouliaris* v. *Pina*, 23 Mass. App. Ct. 722, 726-727 (1987) (discussing ability of buyer to request extension of mortgage commitment date prior to its expiration, as well as ability of seller to insist upon performance under terms of contract).

We next turn to the ramifications of the failure of either party to sign the P&S. As we have previously determined, "parties will be held to the deadlines they have imposed upon themselves when they agree in writing that time is to be of the essence." *Owen* v. *Kessler*, 56 Mass. App. Ct. 466, 469 (2002). As such, "[t]he deadline is a condition subsequent, and if the condition subsequent is not met (i.e., an executed P&S agreement), or waived, then the parties' obligations to each other are extinguished." *Ibid.* See *Kurker* v. *Shoestring Properties Ltd. Partnership*, 68 Mass. App. Ct. 644, 654 n.11 (2007) ("The final OTP also contained the phrase '[t]ime is of the essence hereof,' but the judge correctly determined that the timeliness of the purchase and sale execution was not an issue because it was waived by the parties through their continuing contact and activities with respect to the purchase and sale agreement"). See also *Lafayette Place*

*Assocs.* v. *Boston Redev. Authy.*, 427 Mass. 509, 527 (1998), cert. denied, 525 U.S. 1177 (1999) (where neither party tendered performance, neither was in breach or default). Here, since neither party was in breach merely by failing to sign the P&S by February 26, and neither party waived that deadline, the only question is whether Richardson breached the OTP by repudiating it on February 25, 2008; if she did not, the OTP expired by its own terms.[4]

"A material breach of contract by one party excuses the other party from performance as matter of law," and whether a material breach has occurred is a question of fact. *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 171 (1997). A repudiation of a contract is a material breach, and "[i]n order to operate as a discharge of the other party, the repudiation must be either with respect to the entire performance that was promised or with respect to so material a part of it as to go to the essence. It must involve a total and not merely a partial breach." *Bucciero* v. *Drinkwater*, 13 Mass. App. Ct. 551, 555 (1982), quoting from 4 Corbin, Contracts § 975, at 918 (1951).

"Repudiation by one party relieves the other party from further performance, but such repudiation 'must be a definite and unequivocal manifestation of intention [not to render performance].' " *Hammond* v. *T.J. Litle & Co.*, 82 F.3d 1166, 1178 (1st Cir. 1996), quoting from *Thermo Electron Corp.* v. *Schiavone Constr. Co.*, 958 F.2d 1158, 1164 (1st Cir. 1992). See *Vander Realty Co.* v. *Gabriel*, 334 Mass. 267, 270 (1956) (failure to perform condition precedent "prior to the time of performance was a renunciation of the agreement by inconsistent conduct and relieved the plaintiff from the necessity of offering performance"); *Kanavos* v. *Hancock Bank & Trust Co.*, 395 Mass. 199, 201-202 (1985) (bank repudiated option contract to sell shares of stock by selling shares to a third party); *Limpus* v. *Armstrong,*

---

[4]The OTP, in part, addressed the remedy for failure to perform under its terms. As was the case in *Howard* v. *Wee*, 61 Mass. App. Ct. 912, 912-913 (2004), the OTP here included standard language limiting the seller's recourse to retaining the $1,000 deposit made along with the tender of the OTP: "If I do not fulfill my obligations under this Offer [including the obligation to sign the P&S on or before February 26, 2008], the above mentioned deposit shall forthwith become your property without recourse to either party. . . . A similar provision shall be included in the Purchase and Sale Agreement with respect to any deposits held under its terms." The OTP here "contains no parallel limitation of the buyer's recourse for a breach by the seller." *Id.* at 913 n.3.

3 Mass. App. Ct. 19, 22 (1975) (defendants repudiated purchase and sale contract by entering agreement with third party); *Bucciero* v. *Drinkwater, supra* at 556 (failure to appear at closing "clearly manifested their refusal to perform the agreement"); *Pierce* v. *Clark*, 66 Mass. App. Ct. 912, 913-914 (2006) (same). Compare *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. at 523 ("mere fact that uncertainties remained" did not establish repudiation in absence of clear expression of an unwillingness to perform).

A seller's repudiation of her contractual obligation makes unnecessary any tender of performance or offer of performance by the buyer, and where it is established that the buyer was ready, willing, and able to perform, specific performance is the appropriate remedy. See *Limpus* v. *Armstrong, supra* at 22. See also *Charles River Park, Inc.* v. *Boston Redev. Authy.*, 28 Mass. App. Ct. 795, 803-804 (1990). Contrast *Beck* v. *Doore*, 319 Mass. 707, 710 (1946) (plaintiff failed to show defendant's default where he "never chose to test the defendant's ability and willingness to perform by tendering performance and demanding a conveyance").

In essence, this case turns on the substance of the telephone conversation between Sharaf and Kriss, to wit, whether Richardson clearly manifested a refusal to perform under the original P&S, or merely rejected the request for a modification to its terms. As there are conflicting accounts of what was said, a genuine question of material fact exists regarding the alleged breach.

Although Richardson was clearly wrong that Coviello's request to change the mortgage commitment date voided the contract, there is no conclusive evidence, on the summary judgment record, that she would have rejected Coviello's tender of the original P&S before 5:00 P.M. on February 26. Richardson never recalled the original draft P&S she tendered on February 21 after her denial of Coviello's request on February 19 to change the mortgage commitment date. Nor does Richardson ever flatly state that she would not have gone through with the sale on its original terms.[5] While there is some uncertainty concerning

---

[5]Richardson's amended responses to Coviello's first request for admissions fail to resolve conclusively her unwillingness to go through with the sale on the original terms. See, e.g., response number 39:

"39. RICHARDSON through her attorney, within the time specified in

her willingness to close based on her assertions that she was not bound by the terms of the OTP after Coviello's request to modify the date, she nonetheless repeatedly argued that the obligations of the parties under the OTP expired when they failed to enter into a P&S by 5:00 P.M. on February 26, 2008.

While Coviello was not required to "go through the sham of a tender" in the face of a conclusive repudiation, *Foster* v. *Bartolomeo*, 31 Mass. App. Ct. 592, 594-595 (1991), the disputed facts here lack an agreed-upon definitive act, such as sale of the property to a third party, or outright rejection of the original P&S, signed by Coviello and tendered along with the required deposit of $12,500, or a recall of the P&S by Richardson. In the end, we are left with two differing accounts of what was said during the telephone call. Based on the judge's statements that Richardson "refused to move forward with the signing," and that she "chose not to go forward, as required by the valid and binding OTP," it appears that he gave more weight to Coviello's version of the facts. In the absence of a definitive repudiating act, viewing the evidence in the light most favorable to Richardson, summary judgment was inappropriate.[6] Whether Richardson repudiated the contract will be determined by whose version of the events the fact finder credits after trial.

The judgment is reversed and the matter is remanded for trial.[7]

*So ordered.*

---

the [OTP] for RICHARDSON and COVIELLO to sign a [P&S], notified Attorney Kriss that RICHARDSON would not complete the sale as per the [OTP].

"39. Richardson admits that she refused to sign a [P&S] because Coviello made a second offer/counter offer with unacceptable material terms in breach of the OTP; Richardson denies any other facts contained in this request."

[6]Given our resolution of the case on this ground, we need not address Richardson's alternate argument concerning whether Coviello was ready, willing, and able to perform.

[7]The plaintiff's request for costs and fees on appeal is denied.