NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-794                                          Appeals Court

NANCY DALRYMPLE  vs.  TOWN OF WINTHROP.

No. 17-P-794.

Suffolk.     December 13, 2019. - June 2, 2020.

Present:  Sullivan, Maldonado, & Wendlandt, JJ.


Practice, Civil, Summary judgment.  Contract, Settlement
    agreement, Performance and breach, Construction of
    contract.  Judgment, Implementing settlement agreement.
    Judicial Estoppel.


    Civil action commenced in the Superior Court Department on
January 5, 2016.

    The case was heard by Robert J. Kane, J., on motions for
summary judgment.


    Benjamin Flam for the plaintiff.
    Michele E. Randazzo for the defendant.


    SULLIVAN, J.  The plaintiff, Nancy Dalrymple, appeals from

a summary judgment entered in favor of the town of Winthrop

(town), dismissing her complaint for breach of contract and

unjust enrichment.[1]  On appeal, she contends that the town
committed a breach of a settlement in a Federal court action.
The town maintains that Dalrymple repudiated the settlement
agreement and pursued claims barred by its terms.  We conclude
that Dalrymple's delay in signing the settlement for a period of
nearly one year after the agreement was first made, while
litigating claims that were barred by the release, constituted a
repudiation of the agreement as a matter of law.  Accordingly we
affirm the entry of judgment in favor of the town.

Background.  The matter came before the Superior Court
judge on cross motions for summary judgment.  Because judgment
was granted for the town, we review the evidence in the light
most favorable to Dalrymple.  See Khalsa v. Sovereign Bank,
N.A., 88 Mass. App. Ct. 824, 830 (2016).

Dalrymple was a police officer employed by the town.[2]  On
February 8, 2012, Dalrymple filed suit against the town in the

---

[1] Dalrymple's original complaint also contained a count alleging unfair and deceptive acts, see G. L. c. 93A and G. L. c. 176D, against Winthrop's insurer, the Massachusetts Interlocal Insurance Association.  The parties later stipulated to the dismissal of Dalrymple's claims against the insurer.

[2] There exists a long history of administrative proceedings and litigation involving the parties.  See Dalrymple v. Civil Serv. Comm'n, 50 Mass. App. Ct. 611, 612-616 (2000) (detailing Dalrymple's history as police officer, and harassment and discrimination she experienced in that position).  See also Dalrymple v. Civil Serv. Comm'n, 82 Mass. App. Ct. 1107 (2012) (rule 1:28 memorandum and order affirming Civil Service Commission's ruling upholding police chief's decision to suspend

United States District Court for the District of Massachusetts alleging that the town had violated State and Federal discrimination laws.[3]  At the same time, other discrimination and retaliation claims were pending before the Massachusetts Commission Against Discrimination (MCAD).  In January, 2014, the MCAD issued a decision favorable to Dalrymple ordering that she be promoted to sergeant retroactive to March 1, 2002.  Dalrymple v. Winthrop, 36 Mass. Discrimination L. Rep. 10 (2014).

On March 21, 2014, with trial in the Federal case set to begin ten days later, the parties agreed to settle.  Dalrymple's attorney reported the case settled to the Federal court.  The parties agree that the terms of the settlement required that the town (1) pay Dalrymple $110,000; (2) offer Dalrymple the ability to purchase two cemetery plots in town-owned cemeteries; (3) credit 821 hours of sick leave; and (4) agree that the settlement would not impact claims Dalrymple might have for injuries in the line of duty.  In exchange, Dalrymple agreed to

---

Dalrymple for five days for refusing to consent to fitness-for-duty examination); Dalrymple v. Winthrop, 36 Mass. Discrimination L. Rep. 10 (2014) (hearing officer determination that town had discriminated and retaliated against Dalrymple, ordering that she be promoted to sergeant retroactively to 2002, and awarding emotional distress damages).

[3] Dalrymple amended her complaint on October 26, 2012, and later filed a second suit against the town based on related events.  The Federal District Court consolidated the two actions on April 10, 2013.

(1) dismiss her Federal court lawsuit and (2) execute a general release of claims. There is no contemporaneous documentation in the record regarding the effective date of the release. On March 24, 2014, the Federal court entered a sixty-day dismissal nisi order. Dalrymple was sworn in as sergeant on March 31, 2014, in accordance with the MCAD order.

Within one to two days of the promotion, the department assigned her to the night shift. On April 4, 2014, Dalrymple and her union filed a grievance alleging that the police chief had violated the collective bargaining agreement (CBA) by reassigning Dalrymple to the night shift.

Five days later, counsel for the town sent plaintiff's counsel a draft release that included all claims through the date of execution. Dalrymple's attorney sent the town's attorney a new draft settlement agreement and release on April 17, 2014, with a carve-out from the general release for "[t]he order that led to Ms. Dalrymple's grievance, filed on April 4, 2014, and any claims or causes of action arising out of the subject of the April 4, 2014 grievance."[4] Although there were e-mails between attorneys for the town that suggest that they might have been amenable to the proposal, there is no written

---

[4] The proposed "carve-out" also applied to any possible claims arising from Dalrymple's ownership of property in Winthrop.

response to this proposal in the record. In the Superior Court, Dalrymple claimed the town had agreed to the carve-out. The town attorney's affidavit stated that the parties agreed upon a release of claims "up until the date plaintiff signed the release." The town left open at the summary judgment hearing whether there had been agreement on the carve-out; counsel stated at the hearing on summary judgment that "[w]e don't think that there was a carve out, but I can't prove it, and I don't think [Dalrymple's counsel] can prove it one way or the other, because there's just no records that show an acceptance of that term." On appeal, the defendants now agree for purposes of summary judgment that an agreement on the carve-out was reached, but the record does not reflect when, if at all, the parties agreed to the carve-out.[5]

At some point on or after April 25, 2014, Dalrymple's counsel informed the town's attorneys that Dalrymple wished to withdraw from the settlement and wanted "her day in court." Counsel for the town filed an affidavit stating that he understood "that Ms. Dalrymple was refusing to sign a release precisely because she no longer wanted to waive any claims she

---

[5] In the Superior Court Dalrymple claimed the parties had agreed to the carve-out before she sought to return the case to the docket. The motion judge treated Dalrymple's assertion that the carve-out was agreed to as true for purposes of summary judgment.

had against the [t]own and wanted to continue to pursue her [F]ederal court litigation, despite her prior agreement to the contrary."  A second attorney for the town stated that it was her understanding that "the source of Ms. Dalrymple's unwillingness [to sign the release] was because she was upset about certain actions having occurred with respect to her employment as a police officer, in particular her shift assignment."[6]

On May 9, 2014, Dalrymple sought a thirty-day extension of the dismissal nisi order, which was granted to June 22, 2014. Attorneys for Dalrymple and for the town unsuccessfully attempted to broker a "global settlement" of all pending disputes.  On June 12, 2014, Dalrymple and her union filed a third grievance alleging that the police chief had violated the CBA in June, 2014, by preventing her and other sergeants from bidding on a shift.  On June 16, 2014, Dalrymple submitted a motion to set aside the dismissal nisi order and to restore the case to the Federal court calendar.  In that motion, Dalrymple stated without further explanation that "[t]he parties' efforts

---

[6] On April 27, 2014, Dalrymple's union also filed a second grievance on behalf of Dalrymple, two other named officers, and all other affected union members, alleging that, on April 16, 2014, the police chief had violated the CBA by hiring for a newly-created position without properly interviewing or considering qualified candidates, a decision that had the effect of discriminating against officers who were not white men.

to resolve the matter have proven unsuccessful."  The town opposed the motion, arguing that good cause did not exist to return the case to trial because there had been a settlement agreement that Dalrymple had refused to sign.[7]  On June 20, 2014, the Federal court judge denied Dalrymple's motion to set aside the order of dismissal nisi, "[b]ecause the parties reported that the case was settled and this request fail[ed] to give any reasons why the settlement should be set aside."

On February 18, 2015, Dalrymple filed a new charge with the MCAD alleging, among other things, that the town's actions giving rise to her April 4, 2014, and June 12, 2014, grievances were discriminatory and retaliatory, and that the town had not given her the same swearing-in ceremony on March 31, 2014, as other sergeants had received.[8]

---

[7] In her deposition in this matter, Dalrymple testified that her reason for refusing to sign the settlement agreement during that period was that she wanted "[t]o go forward with the trial in the Federal court.  She testified:  "[A]t that time when my counsel went before the court to ask that it be put back on, I wanted to go forward."  In her pro se brief to this court she says, "[When] I agreed to settle and give a release to the Town regarding the Federal District Court matter I was not giving away my future rights regarding any adverse employment actions the Town would take against me under c. [151B] nor was I bound to give up my rights under the Collective Bargaining Agreement." These explanations were not provided to the Federal court when the motion to restore the case was filed.

[8] The MCAD dismissed the complaint on August 10, 2015, for lack of probable cause.

On or about May 7, 2015, counsel for the plaintiff notified the town that Dalrymple was prepared to execute the release of claims; counsel for the town replied that there was no longer a valid agreement.  On May 15, 2015, plaintiff's counsel sent a demand letter to the town, setting out claims of unfair and deceptive practices arising from the town's failure to honor the settlement agreement.  On June 8, 2015, the town replied, denying that it had committed a breach of the agreement and stating that it was Dalrymple who had committed a breach by failing to execute a release, by attempting to return the Federal case to trial, and by litigating claims against the town regarding events arising before the "effective date" of the settlement agreement.

On June 17, 2015, Dalrymple's counsel sent an executed agreement and release to the town, dated June 20, 2014, the date when the Federal district court denied her motion to set aside the order of dismissal nisi.  The signed agreement and release included the carve-out added by Dalrymple's lawyers in their April 17, 2014 draft, but added the June 20, 2014 effective date.  The letter accompanying the agreement and release encouraged the town to sign and implement the settlement.[9]  It did not.

---

[9] On July 30, 2015, Dalrymple's counsel made a final attempt to salvage the settlement.  In his letter, counsel stated that

Dalrymple then filed suit to enforce the settlement agreement. On cross motions for summary judgment, a judge of the Superior Court concluded that Dalrymple had repudiated the settlement agreement as a matter of law, and the judge entered judgment for the town. This appeal followed.

Discussion. "We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, 'all material facts have been established and the moving party is entitled to judgment as a matter of law.'" Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 215 (2018), quoting Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). See Mass. R. Civ. P. 56, 365 Mass. 824 (1974). "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." Sea Breeze Estates, LLC, supra, quoting Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008). "If the moving party carries its burden, 'the party opposing the motion must respond and allege specific facts establishing the existence of a

---

"we concede that [Dalrymple] experienced buyer's remorse and asked the court to relieve her of the agreement by restoring the matter to the trial list," but he argued that "[m]atters . . . remained in limbo until we notified you, in May 2015, that she was now prepared to go forward with the terms we had negotiated in 2014." Dalrymple now claims the statement was unauthorized. The statement is immaterial to our resolution of the case, and we do not consider it. For the reasons explained infra, it was Dalrymple's conduct that compels a judgment for the defendant.

genuine issue of material fact.'" Sea Breeze Estates, LLC, supra, quoting French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660 (2011).

1. Repudiation, breach, and judicial estoppel. Both parties contend that the other repudiated a binding agreement. We first address whether Dalrymple repudiated the agreement when she sought to return the case to the trial list. We next consider whether Dalrymple engaged in a material breach of the agreement when she failed to sign it for a period of one year, and when she litigated claims arguably covered by the release. In the course of the latter discussion we also consider whether the town was judicially estopped from denying the existence of a binding agreement at the time that Dalrymple tendered the signed document.

Dalrymple contends that the town committed a breach of a binding agreement when it refused to perform after she signed the settlement agreement and release.[10]  The town maintains that Dalrymple engaged in a material breach, thus repudiating the agreement as a matter of law, when she failed to sign a release and moved to restore the Federal case to the trial docket on June 16, 2014.

_____

[10] Dalrymple retained counsel after filing her appellate brief pro se.  New successor counsel filed a reply brief and appeared at oral argument.

"Repudiation by one party relieves the other party from further performance, but such repudiation 'must be a definite and unequivocal manifestation of intention [not to render performance].'" Coviello v. Richardson, 76 Mass. App. Ct. 603, 609 (2010), quoting Hammond v. T.J. Litle & Co., 82 F.3d 1166, 1178 (1st Cir. 1996).  We pass on the question whether Dalrymple showed a "definite and unequivocal manifestation" of her intent not to perform her obligations under the settlement agreement when she sought to return the Federal case to trial (citation omitted).  Coviello, supra at 609.  The record shows that plaintiff's counsel reported to the town's counsel two possible reasons for her motion -- a desire to walk away, or a reluctance to sign a release that included events occurring after the oral agreement was reached.  However, the release (as originally drafted by the town) would have required her to waive the April 4, 2014 grievance, and there is no indication in the contemporaneous record whether the town had agreed to the carve-out at the time Dalrymple's counsel initially proposed it or at the time Dalrymple sought to restore the case to the docket. The timing of any agreement regarding the carve-out may be material, and because we do not have an adequate record on this

factual issue, we decline to address whether summary judgment could be properly entered on this basis.[11]

Dalrymple did not execute the agreement and release for over eleven months after the Federal court ruling, however, and continued to litigate claims that were covered by the release she proffered. Therein lies the undisputed fact that commands the result here. Dalrymple contends that the doctrine of judicial estoppel bars the town from denying the existence of a contract that it asserted was binding in Federal court, and that the town was required to perform its obligations under the settlement agreement once Dalrymple signed the agreement and

---

[11] Neither party has briefed whether, in an employment discrimination case, an employer may lawfully insist that allegedly discriminatory conduct that occurs between the date of an agreement in principle to settle discrimination claims and the time the settlement agreement is executed be released by a general release of claims as of the date of execution. See generally Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390, 397, 398 (2009), abrogated on other grounds by Joule, Inc. v. Simmons, 459 Mass 88 (2011) (in context of workplace discrimination claims, "considerations of public policy play an important role in the interpretation and enforcement of contracts" and waiver of contractual rights or remedies must be stated in "clear and unmistakable terms"), cited with approval in Crocker v. Townsend Oil Co., 464 Mass. 1, 14-15 (2012) (requiring specificity in releases of statutory wage claims). The town agrees, for purposes of summary judgment, that it was willing to agree to a release that included the carve-out for the April 4, 2014 grievance "and any claims or causes of action arising out of the subject of the April 4, 2014 grievance." The record does not indicate when such an agreement was reached, and the timing of any agreement regarding the carve-out may be material. On this record, therefore, we decline to address the matter.

release, no matter how long it took her to sign it.  The town maintains that Dalrymple committed a breach of a material term of the settlement agreement and release by her months-long refusal to execute it, thus repudiating the contract.  On the basis of the undisputed facts before us, we conclude that the town is not estopped from arguing that Dalrymple engaged in a material breach of the agreement when she failed to execute it for a period of eleven months after the Federal court declined to reinstate the case to the trial list, thus repudiating the agreement.

We set forth the law relevant to material breach and repudiation, as well as the law of judicial estoppel, as our analysis of these doctrines is interrelated, resting ultimately on the reasonableness of Dalrymple's extended failure to sign the agreement and release.  "A material breach of contract by one party excuses the other party from performance as matter of law."  Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 171 (1997).  "A repudiation of a contract is a material breach, and '[i]n order to operate as a discharge of the other party, the repudiation must be either with respect to the entire performance that was promised or with respect to so material a part of it as to go to the essence.  It must involve a total and not merely a partial breach."  Coviello, 76 Mass.

App. Ct. at 609, quoting Bucciero v. Drinkwater, 13 Mass. App. Ct. 551, 555 (1982).

"[T]wo fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel.  First, the position being asserted in the litigation must be directly inconsistent, meaning mutually exclusive of, the position asserted in a prior proceeding. . . .  Second, the party must have succeeded in convincing the court to accept its prior position."  Holland v. Kantrovitz & Kantrovitz LLP, 92 Mass. App. Ct. 66, 74 (2017), quoting Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640-641 (2005).  "Notwithstanding that general articulation of the doctrine, there may arise certain instances where the party's prior position was asserted in good faith, and where the circumstances provide a legitimate reason -- other than sheer tactical gain -- for the subsequent change in that party's position."  Holland, supra, quoting Otis, supra at 642.

Assuming, without deciding, that the March, 2014 settlement agreement (with the April, 2014 carve-out) was enforceable under a theory of judicial estoppel at or within a reasonable period of time after the Federal court issued its June 20, 2014 order, Dalrymple could no longer enforce the settlement agreement and release some eleven months later because she waited an unreasonable amount of time to execute it, while simultaneously litigating claims covered by it.

None of the draft agreements included language specifying a date by which the parties were required to sign.  However, "where a written agreement fails to specify a deadline by which a contractual obligation or right must be exercised, courts may infer that the parties intended a 'reasonable' date if this can be done without changing the essence of the contract."  Duff v. McKay, 89 Mass. App. Ct. 538, 545 (2016), citing Plymouth Port, Inc. v. Smith, 26 Mass. App. Ct. 572, 575 (1988); Middleborough v. Middleborough Gas & Elec. Dep't, 47 Mass. App. Ct. 655, 658 (1999).  See Lubin & Meyer, P.C. v. Lubin, 427 Mass. 304, 309-310 (1998); Peterson v. Tremain, 35 Mass. App. Ct. 422, 425 (1993); Charles River Park, Inc. v. Boston Redev. Auth., 28 Mass. App. Ct. 795, 814 (1990) ("in the absence of such a specific requirement, the time for performance does not extend forever but only for a reasonable time").  "When, as here, the facts are undisputed, the question of whether an act was done within a reasonable time is a question of law for the court."  Middleborough v. Middleborough Gas & Elec. Dep't, 47 Mass. App. Ct. 655, 658 (1999), citing Stone v. W.E. Aubuchon Co., 29 Mass. App. Ct. 523, 528 (1990).  "What is a reasonable period of time depends on the nature of the contract, the probable intention of the parties, and the attendant circumstances."  Plymouth Port, Inc., supra.  See Duff, supra; Charles River Park, Inc., supra.

In the context of the settlement of the employment dispute at issue here, delaying the execution of the agreement and release of claims by over eleven months was unreasonable.[12] The ongoing employment relationship places a premium on the certainty associated with a final resolution of claims. The town negotiated the settlement agreement seeking certainty regarding its exposure to Dalrymple's claims, and it was denied an essential and inducing feature of its bargain when Dalrymple failed to sign the release for nearly one year after the Federal court denied her motion and after, as Dalrymple claimed in moving for summary judgment, the parties had agreed to the carve-out she sought.

The failure to sign the agreement and release in a reasonable period of time, coupled with the pursuit of litigation covered by it, constituted a material breach as a matter of law. "A party to a contract generally is relieved of [its] obligations under that contract only when the other party has committed a material breach, that is, 'a breach of "an essential and inducing feature of the contract[]."'" Duff, 89 Mass. App. Ct. at 547, quoting Lease-It, Inc. v. Massachusetts

_____

[12] We do not hold that the passage of eleven months is per se unreasonable. Rather, given the undisputed facts, it was here. We likewise do not decide whether the passage of time or the nature of the covered claims that the plaintiff did litigate would, on their own, be per se unreasonable.

Port Auth., 33 Mass. App. Ct. 391, 396 (1992). "[O]nly a material breach of a contract . . . justifies a party thereto in rescinding it." Lease-It, Inc., supra, quoting 6 Williston, Contracts § 829 (3d ed. 1962).

"Whether a breach is material or immaterial normally is a question for the jury to decide." Lease-It, Inc., 33 Mass. App. Ct. at 396, citing 6 Williston, Contracts § 841, at 159. See EventMonitor, Inc. v. Leness, 473 Mass. 540, 546 (2016) ("Whether a party has committed a material breach ordinarily is a question of fact"). Nevertheless, if "the evidence on the point is . . . undisputed . . . the court must intervene and address what is ordinarily a factual question as a question of law." EventMonitor, Inc., supra, quoting Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 11 (1st Cir. 2006). See Lease-It, Inc., supra (materiality "normally is a question for the jury to decide. . . . On this record, however, we may decide the matter on our own"). The facts are undisputed. Dalrymple's failure to execute a release of claims in a reasonable amount of time, together with the ongoing litigation, was a material breach as a matter of law, because it went to "an essential and inducing" element of the contract; an end to litigation and the certainty provided by the release constituted the essential benefit of the bargain for the town (citation omitted). Duff, 89 Mass. App. Ct. at 547. Dalrymple repudiated

the agreement, and the town was relieved of its obligation to honor it.

As previously noted, Dalrymple filed a pro se MCAD charge against the town involving conduct predating what she claims to be the June 20, 2014 effective date, conduct that was not included in the carve-out for the April 4, 2014 grievance and related claims.[13]  For example, her February 18, 2015 MCAD charge claimed that the town had retaliated against her by declining to provide a ceremony and a cake when she was sworn in as a sergeant on March 31, 2014.  These events were not included in the carve-out for the April 4, 2014 grievance.[14]  She also referenced the events that gave rise to the June 12, 2014 grievance regarding a different departmental shift bid.  This claim too predated the June 20, 2014 effective date.  Consequently, Dalrymple's maintenance of the above mentioned portions of the MCAD charge was also a breach of the settlement

---

[13] Contrary to the argument in her reply brief, Equal Employment Opportunity Commission v. Astra USA, Inc., 94 F.3d 738 (1st Cir. 1996), does not hold that an employee may continue to file charges on released claims based on conduct predating the effective date of the release.  Rather, that case stands for the proposition that an employee who has released claims may not be precluded from cooperating with an Equal Employment Opportunity Commission investigation.  Id. at 744-746.

[14] Dalrymple attempts to defeat summary judgment by claiming that she thought the cases were related.  The two sets of events arose out of different facts and circumstances, as is evident from the face of the MCAD charge and the grievances.

agreement. When considered in conjunction with her failure to sign the release for eleven months, this conduct constituted a material breach and repudiation of the agreement, which the town was then no longer obligated to perform.[15],[16]

2. Unjust enrichment. For the reasons well-stated by the motion judge, equity does not compel the town to honor a contract that Dalrymple had repudiated. "[I}n light of the nature of the contract and the circumstances, it would be inequitable to hold [the town] to an agreement . . . when it could no longer receive a substantial portion  of the benefit it bargained for." Charles River Park, Inc., 28 Mass. App. Ct. at 816.

Conclusion. Because Dalrymple engaged in a material breach of the contract, the town was relieved of its obligation to perform. The town was entitled to summary judgment as a matter of law.

---

[15] Dalrymple's inclusion of other background facts predating June 20, 2014, in the MCAD charge did not constitute a breach of the agreement. The MCAD did not treat her recitation of the history of litigation between the parties as a separate violation, and it did not adjudicate any claims based on those background facts. Cf. Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 530 n.10 (2001) (time barred events may still be considered as background facts).

[16] We do not decide whether the filing of the April 27 and June 12, 2014 grievances (as opposed to the MCAD charge) constituted a repudiation of the agreement, nor do we decide whether the filing of grievances by the union fell within the scope of the release.

<u>Judgment affirmed</u>.