NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-190

JOSE L. PEREZ

vs.

ORLANDO DIAZ & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this breach of contract action, the plaintiff, Jose L. Perez, appeals from a separate and final judgment that entered in favor of defendants Orlando Diaz and 310 Columbia Road, LLC, and dismissed four counts of the first amended complaint.[2] The judgment entered after the defendants' motion for partial summary judgment was allowed and a motion by the plaintiff, for reconsideration of that order, was denied. On appeal, the plaintiff maintains that the motion judge erred by ruling that

---

[1] 310 Columbia Road, LLC, and Wilfredo Figuero, doing business as Kruegers Auto Repair and Towing; Amaury A. and Yeudy F. Mateo Batista, doing business as Mateo Brothers Barbershop, as reach and apply defendants.

[2] The plaintiff brought four other claims against the defendants that are not the subject of this appeal.

the parties' installment purchase and sale agreement (agreement) was an integrated one, and that summary judgment was inappropriate because of factual disputes. We affirm.

Background. "We summarize the undisputed facts drawn from the summary judgment record; to the extent the record includes disputed evidence, we consider that evidence in the light most favorable to [the nonmoving party]." Cesso v. Todd, 92 Mass. App. Ct. 131, 132 (2017), citing Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 215 (2003).

The defendants owned three commercial units at 310 Columbia Road and 80 Ceylon Street in Dorchester (the property). The plaintiff operated an auto body shop in one of them. In December 2014, Diaz approached the plaintiff on behalf of the defendants about purchasing the property; he outlined the proposed terms of the sale in a handwritten letter.

The unsigned letter included a proposed down payment of $80,000, followed by payments of $20,000 every four months for four years. Under the terms of this letter, the final payment was to be $30,000, "unless previous payments have been made in larger amounts to satisfy debt in due time." The letter also proposed that the plaintiff would assume responsibility for paying the mortgage, water, sewer, and maintenance bills for the

2

property, as well as for collecting monthly rent from the other tenants until all payments were made.

The parties later executed an "official version" of the agreement that was prepared by the plaintiff's secretary and witnessed by two of the plaintiff's employees. The signed agreement, which the plaintiff characterized as "the actual contract that we signed," named a total purchase price of $350,000. It contained many of the same terms as the handwritten letter, including the $80,000 down payment, a $20,000 quarterly payment schedule, and the plaintiff's responsibilities for the mortgage, bills, and building management. Unlike the handwritten, unsigned letter, the signed agreement did not include an option for a reduced final installment payment. Instead, it provided that the final payment would be $30,000, made in April 2019. The defendants agreed to transfer the property title to the plaintiff if the contract terms were satisfied.

Between April 2015 and August 2017, the plaintiff periodically paid the defendants different cash amounts to satisfy the quarterly $20,000 obligation, rather than paying the agreed amount at regular intervals. In August 2017, the plaintiff attempted to prepay the balance of the purchase price in a lump sum. The defendants refused. The plaintiff

3

eventually stopped making installment payments to the defendants. The plaintiff twice later attempted to pay off the contract balance, but the defendants refused.

In September 2020, the defendants' attorney informed the plaintiff that the property was under an offer to purchase by a third party, and the plaintiff filed this suit. In allowing summary judgment for the defendants on counts one through four of the first amended complaint, the judge held that there was "no factual dispute that the controlling agreement of the parties did not include an express provision for accelerating the payment schedule," that the plaintiff materially breached the contract by ceasing installment payments, and that the plaintiff's breach excused the defendants' performance. He later denied the plaintiff's motion for reconsideration.

Discussion. "We review a grant of summary judgment de novo," Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 252-253 (2015), to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted). Molina v. State Garden, Inc., 88 Mass. App. Ct. 173, 177 (2015). The plaintiff maintains that there is a factual dispute whether the parties intended the signed agreement to be a fully-

4

integrated contract because it contained no integration clause and omitted the unsigned letter's language about paying in larger sums.  The plaintiff also contends that the defendants' refusals to accept payment of the full purchase price constituted a material breach, excusing the plaintiff's nonpayment of subsequent installments.

1.  Integration.  "A fully integrated agreement is a statement which the parties have adopted as a complete and exclusive expression of their agreement."  Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 242 (2013), quoting Starr v. Fordham, 420 Mass. 178, 188 n.8 (1995).  "Such an agreement discharges prior agreements to the extent that they are within its scope; evidence of those prior agreements thus is not admissible to vary or to broaden the written terms of the fully integrated agreement."  Chambers, supra.

"Whether an agreement is fully integrated turns on the intention of the parties and 'is an issue of fact for the decision of the trial judge, entirely preliminary to any application of the parol evidence rule.'"  Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC, 86 Mass. App. Ct. 242, 248 (2014), quoting Green v. Harvard Vanguard Med. Assocs., 79 Mass. App. Ct. 1, 9 (2011).  "Where the writing shows on its face that it is the entire agreement of the parties and comprises all that

5

is necessary to constitute a contract," it is presumed that the parties have "placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction" (quotation and citation omitted). Realty Fin. Holdings, supra, at 249. "[T]he nature of the writing or the situation of the parties may warrant consideration of the parties' negotiations in order to determine whether they intended that the written agreement, even one containing an integration clause, be fully integrated." Id. at 248.

The plaintiff testified that he discussed the terms of the agreement in two meetings with Diaz and that the initial letter from Diaz was a "draft," a "sample of what [the defendants] wanted." The plaintiff had his secretary prepare the typed version of the agreement, which he testified was "the actual contract," and the parties signed it in the presence of witnesses. The contract, although unorthodox in form, sets forth all the essential terms of the parties' agreement to convey the property, including the purchase price, down payment amount, and an installment payment schedule over a defined period. On its face, the writing appears to be "the entire agreement of the parties and comprises all that is necessary to constitute a contract" (quotation and citation omitted), Realty

6

Fin. Holdings, 86 Mass. App. Ct. at 248, despite the absence of an integration clause or one term proposed in the defendants' draft. We conclude, as the judge did, that the signed contract was the controlling agreement between the parties.[3]

The controlling agreement did not include any right to pay installments in larger amounts, nor did it require the defendants to accept such prepayment from the plaintiff. To read in such a term "would impermissibly broaden the integrated writing." Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 592 (2007). The judge correctly determined that there was no dispute of material fact whether the written agreement was fully integrated. See Realty Fin. Holdings, 86 Mass. App. Ct. at 251, quoting USTrust v. Henley & Warren Mgt., Inc., 40 Mass. App. Ct. 337, 343 (1996) ("A judge uses summary judgment for the purpose for which it was intended when, as in this case, a party seeks to alter what the agreement provides by saying, in effect, 'that was not what we meant at all'").

2. Breach. "[A] material breach of a contract occurs when the breach concerns an essential and inducing feature of the contract" (quotation omitted). G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 733-734 (2018). "Essential and

_____

[3] We also agree with the judge that the unsigned letter was not an enforceable contract for the sale of land because it did not comply with the Statute of Frauds. G. L. c. 259, § 1.

inducing features of a contract are provisions that are 'so serious and so intimately connected with the substance of the contract[]' that a failure to uphold the provision would justify the other party walking away from the contract and no longer being bound by it." Id. at 734, quoting Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930). Although whether a material breach has occurred is generally a question of fact, Coviello v. Richardson, 76 Mass. App. Ct. 603, 609 (2010), "[o]n this record . . . we may decide the matter on our own." Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 396 (1992).

There is no dispute that the plaintiff stopped making the required installment payments under the contract. The plaintiff claims that his breach was excused, but accepting that claim would require interpreting the contract to include a right to prepay the purchase price. Because, like the motion judge, we conclude that the contract contained no such term, this argument is unavailing.

The plaintiff's personal belief that he could prepay the balance of the contract does not change the fact that there was no provision requiring the defendants to accept such payment.[4]

---

[4] The plaintiff's contention about the parties' course of performance is similarly unpersuasive. While the defendants did demonstrate some flexibility in accepting contract payments, they consistently rejected the plaintiff's attempts to prepay the full contract price, and the contract terms provide for the

8

See Realty Fin. Holdings, 86 Mass. App. Ct. at 250 (unexpressed intent of one party cannot control legal effect of parties' integrated agreement). The terms of the contract provided for regular installment payments over a four-year period. "A note such as this, payable in instalments at specified times, is really so many instruments in one form. The time of payment in a note is a condition for the benefit of all parties to it," and the plaintiff cannot "compel the [defendant] to accept payment of an instalment before it is payable, or of the full sum to be ultimately paid, before the maturity of the several obligations" (citation omitted). Trahant v. Perry, 253 Mass. 486, 489 (1925). The defendants did not breach by refusing to accept a payment they had no contractual obligation to accept. See id. See also Barrell v. Britton, 252 Mass. 504, 507 (1925) (while plaintiff offered to pay before due date purchase price entitling him to deed under contract, "the defendant was under no obligation to receive it").

In contrast, the plaintiff's primary obligation under the agreement was to make regular installment payments toward the purchase price, and he stopped making these payments. This

purchase price to be paid over a four-year period. See New England Precision Grinding, Inc. v. Simply Surgical, LLC, 89 Mass. App. Ct. 176, 183 n.10 (2016) ("Although a course of performance may illuminate or supply missing contract terms, it will not be construed to contradict express terms").

9

refusal to pay "was a substantial breach going to the root of the contract." Lease-It, Inc., 33 Mass. App. Ct. at 396. Cf. Bucholz, 272 Mass. at 52 (obligation "to make the monthly payments was an essential and inducing feature of the contracts"). Because "[a] material breach of contract by one party excuses the other party from performance as matter of law," summary judgment on counts one through four properly entered in favor of the two defendants (citation omitted). Coviello, 76 Mass. App. Ct. at 609.[5]

Judgment affirmed.

By the Court (Massing, Hershfang & Tan, JJ.[6]),

Clerk

Entered:  June 11, 2025.

---

[5] Because the plaintiff's motion for reconsideration presented neither changed circumstances nor "a particular and demonstrable error in the original ruling or decision," the judge did not abuse his discretion in denying it. Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 278 (2020), quoting Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012).

[6] The panelists are listed in order of seniority.

10